[No. B034189. Second Dist., Div. Seven. June 13, 1989.]

STATE FARM FIRE AND CASUALTY, Plaintiff and Respondent,
v.
DENNIS R. HARDIN et al., Defendants and Appellants.

502

COUNSEL

Levine, Steinberg & De Pasquale and Rick L. Bove for Defendants and Appellants.

Barry Zalma and Earl A. Beamon II for Plaintiff and Respondent.

OPINION

**LILLIE, P. J.**—Dennis R. and Mary Ellen Hardin appeal from order directing that a dispute between them and State Farm Fire and Casualty

concerning the amount of loss caused by a January 1987 fire to the Hardin property be submitted to appraisal arbitration, and denying the Hardins' cross-petition for an order setting the scope of arbitration.

## FACTS

In January 1987, fire damaged the Hardins' 18,000-square-foot residence which was under construction and scheduled for completion in March 1987. The Hardins submitted to State Farm claims for damage to the residence under their homeowner's policy which provided fire insurance coverage on the property. The policy provides for an appraisal process to resolve disagreements concerning the amount of the loss. Pursuant to the policy, the insured and insurer each select an appraiser; the two appraisers then select a competent, impartial umpire; if the two appraisers are unable to agree on the amount of the loss, they then submit their differences to the umpire; a written agreement signed by any two of these three sets the amount of the loss.

On February 10, 1987, State Farm, after conducting a preliminary investigation, issued a draft for $100,000 to the Hardins as an "advance payment" under the terms of the policy. On February 19, the Hardins provided to State Farm a detailed repair estimate prepared by their contractor in the amount of $869,454.

Between February and March 30, the Hardins and their contractor met with agents and representatives of State Farm and a contractor retained by State Farm to prepare cost estimates pertaining to the fire loss. On March 30, State Farm paid to the Hardins an additional $398,862, which, along with the $100,000 already paid, brought the total amount paid by State Farm to $498,862, which was the cost estimate of the loss prepared for State Farm by G. R. Pollock Associates. In a letter to the Hardins dated March 30, 1987, State Farm advised that "It is the Company's position that the repair estimate of $498,862.00 is a fair and equitable estimate of repair costs. It is further the Company's position that since both parties to the policy are in disagreement over repair costs, we elect appraisal as set forth under your policy . . . . [¶] [State Farm] does not dispute a repair cost estimate of $498,862.00. As such, [we] enclose a draft for $398,862.00 . . . . [¶] Please be advised that [State Farm] does not intend by this letter, to waive any of the policy provisions or conditions. . . ."

Thereafter, the Hardins retained numerous subcontractors and workmen to perform fire restoration work on the property. Further, both State Farm and the Hardins each designated an appraiser and the two appraisers selected a neutral umpire. In Mrs. Hardin's April 10 letter to State Farm, she

stated that the amount paid by State Farm "did not include loss of use, financing, but simply repair of the fire damaged area. You have offered, subject to approval, another $45,500.00 additionally to settle the fire portion. . . . [Y]our offer of settlement did not include some very basic items such as cabinetry in the bathroom, $3,600.00 for spraying, $7,200.00 for baseboard molding, as well as overhead and profit on these items which clearly were a part of the loss." Mrs. Hardin's letter also stated that State Farm had been presented with the Hardins' additional claim in the amount of $405,444.92, which appropriately may be included under coverage for loss of use.

In a June 12 letter to State Farm's attorney, Mrs. Hardin wrote that "the damage as a result of the fire to the building is more extensive than originally reflected in our Proof of Loss Statement. Additional smoke and water damage is becoming evident and we are currently securing engineering statements as well as estimates on the repair of this more extensive damage." Mrs. Hardin's July 13 letter to State Farm's attorney indicated that the proof of loss must also be expanded to include warping of floor joists and water, smoke and mildew damage.

Preliminarily to the appraisal hearing, and on August 21, 1987, at a meeting of the appraisers, the umpire, and representatives of State Farm and the Hardins, the Hardins attempted to set the scope of the appraisal process to include only those items not reflected in State Farm's cost estimate prepared by G. R. Pollock Associates. The position of the Hardins at that meeting was that because State Farm tendered the sum of $498,862 as "undisputed" based on the G. R. Pollock Associates specific and detailed cost estimate, and because the appraiser selected by the Hardins agreed with nearly all of the figures in State Farm's cost estimate, the only items from such cost estimate remaining for appraisal were those items with which the Hardin's appraiser disagreed and those items allegedly omitted from the cost estimate. At that meeting, it was apparently agreed that the scope of the appraisal would be so limited. The date of the appraisal was also continued.

Thereafter, State Farm informed the Hardins' attorney that it intended to submit the entire structural damage loss to the appraisal process. On October 30, State Farm's attorney wrote to the Hardins' attorney that "You have, incorrectly we believe, felt it necessary to bring before the appraisers [State Farm's March 30] letter that accompanied the payment of monies to the Hardins and have attempted to make an issue of the statement that the payment was made as an 'undisputed amount.' That statement has, under the authorities cited to you above, no place in an appraisal. To bring it forward, into evidence for the consideration of the appraisers, appears to be

an attempt to relieve the appraisers of the impartiality that is required of them by the policy and the law. Your actions also seem an attempt to remove from the appraisers the ability to be, as they are required by statute and the policy, disinterested. . . . Since it is clear that we have a disagreement concerning the scope of the appraisal we will be filing shortly a Petition . . . requesting an order compelling the appraisal to proceed expeditiously and judicial direction as to the scope of the appraisers' duties."

On December 3, 1987, State Farm filed petition to compel arbitration and for directions to the arbitrator. The Hardins filed a response to State Farm's petition and also filed cross-petition for order setting the scope of arbitration. In their cross-petition, the Hardins contended that in reliance upon State Farm's representations that the $498,862 was being tendered as "undisputed" based on its cost estimate, they entered into agreements with workmen to repair or replace the specific items of loss in the G. R. Pollock Associates cost estimate, so that State Farm should be "estopped from and has waived its right to dispute the amount of the loss as to the specific, detailed and itemized portions of the loss set forth in the G. R. Pollock Associates cost estimate . . . ."

After hearing, the court granted State Farm's petition and denied the Hardins' cross-petition. Although the order states that the appraisers shall appraise the loss by fire and the amount of "loss of use," and does not explicitly state that the *entire* loss shall be appraised, the parties so interpret the order, and their interpretation is borne out by history of the proceedings below. The Hardins filed timely notice of appeal from "the order compelling and setting scope of appraisal, entered on February 18, 1988." Their primary contention on appeal is that the trial court erred in failing to find that State Farm waived its right to dispute, or is estopped from disputing, the G. R. Pollock Associates cost estimates.

However, before we can reach the merits, we must dispose of the issue of whether the order of February 18, 1988, is an appealable order.

### ORDER IS NOT APPEALABLE

An appealable judgment or order is essential to appellate jurisdiction; the parties cannot, by any form of consent, make a nonappealable order appealable. (*Winter* v. *Rice* (1986) 176 Cal.App.3d 679, 681-682 [222 Cal.Rptr. 340].) The right of appeal is statutory and a judgment or order is not appealable unless expressly made so by statute. (*Supple* v. *City of Los Angeles* (1988) 201 Cal.App.3d 1004, 1009 [247 Cal.Rptr. 554].)

■ An agreement providing for an appraisal is included within the concept of agreements to arbitrate and is governed by Code of Civil Procedure section 1280 et seq. (*Appalachian Insurance Co.* v. *Rivcom Corp.* (1982) 130 Cal.App.3d 818, 824 [182 Cal.Rptr. 11].) While an order denying a petition to compel arbitration is expressly made appealable by Code of Civil Procedure section 1294, subdivision (a), the statute fails to make an order compelling arbitration appealable. ■ Accordingly, an order compelling arbitration is nonappealable. (*Wheeler* v. *St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 353 [133 Cal.Rptr. 775, 84 A.L.R.3d 343].)

"The rationale behind the rule making an order compelling arbitration nonappealable is that inasmuch as the order does not resolve all of the issues in controversy, to permit an appeal would delay and defeat the purposes of the arbitration statute. [Citations.] However, a party compelled to arbitrate is entitled to have the validity of the order reviewed on his appeal from a judgment confirming an award." (*Wheeler* v. *St. Joseph Hospital, supra,* 63 Cal.App.3d at p. 353.) Another court has noted that the order compelling arbitration is interlocutory in nature and works no hardship on the litigant because the party who objects to arbitration may win at the arbitration hearing, and if he does not, the issue is reviewable on appeal from the judgment of confirmation. (*La Pietra* v. *Freed* (1978) 87 Cal.App.3d 1025, 1031 [151 Cal.Rptr. 554].)

"In general, we agree with those courts which have enunciated the principle that the preferred procedure in arbitration proceedings is to proceed with the arbitration and attack the intermediate rulings in connection with a petition to vacate or confirm the arbitrator's award or on appeal from a judgment confirming the award." (*International Film Investors* v. *Arbitration Tribunal of Directors Guild* (1984) 152 Cal.App.3d 699, 706 [199 Cal.Rptr. 690].)

■ In the instant case, appellants apparently do not object to the appraisal procedure itself, but only to the scope of the items to be appraised. Appellants desire the appraisal to consist of a narrower set of items than sought by State Farm. Despite the fact that the trial court has ordered the appraisers to appraise the entire loss, appellants may still prevail at the appraisal if the appraisers value the items of loss as much as or greater than those items were valued in State Farm's cost estimate. Even if appellants do not prevail at the appraisal, there is no risk that the issue of the scope of the appraisers' duties will be waived by participation in the appraisal because the objection has been raised prior to participation. (See *International Film Investors* v. *Arbitration Tribunal of Directors Guild, supra,* 152 Cal.App.3d at p. 706.)

The fact that the instant order also denies the Hardins' cross-petition does not bring it within the provisions of Code of Civil Procedure section 1294, subdivision (a), providing that an aggrieved party may appeal from an order dismissing or denying a petition to compel arbitration. The order denying the cross-petition is, in effect, a denial of a request to exclude certain items from the appraisal process; it is not an order denying a request to compel arbitration. Considered in its entirety, with its substance and effect prevailing over mere form (see e.g. *In re Marriage of Loya* (1987) 189 Cal.App.3d 1636, 1638 [235 Cal.Rptr. 198]), the order is one to compel appraisal arbitration of the entire loss, and, as such, is not appealable. Such a result comports with the Legislature's philosophy and intent in drafting section 1294 that "there should be no appellate consideration of intermediate rulings in arbitration disputes if the superior court was of the view that there should be initial or further proceedings in arbitration." (*Long Beach Iron Works, Inc.* v. *International Molders etc. of North America, Local 374* (1972) 26 Cal.App.3d 657, 659 [103 Cal.Rptr. 200].)

■■■ In exceptional situations, a party aggrieved by an order compelling arbitration may seek appellate review of the order by a petition for writ of mandate. (*Wheeler* v. *St. Joseph Hospital, supra,* 63 Cal.App.3d 345, 353.)
■■■ Although we have no jurisdiction to entertain this appeal, we are aware that we have the power to deem the purported appeal a petition for writ of mandate. Because an appellate court should exercise this jurisdiction only in unusual circumstances (*Olson* v. *Cory* (1983) 35 Cal.3d 390, 401 [197 Cal.Rptr. 843, 673 P.2d 720]), and because this case presents no unusual circumstances, we decline to treat the matter as a petition for writ of mandate.

### DISPOSITION

The appeal is dismissed.

Johnson, J., and Woods (Fred), J., concurred.