[No. B175527. Second Dist., Div. Three. Nov. 10, 2004.]

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
BARBARA J. BALEN, Real Party in Interest.

1426

COUNSEL

Horvitz & Levy, John A. Taylor, Jr., Robert H. Wright; Gates, O'Doherty, Gonter & Guy and Peter J. Gates for Petitioner.

No appearance for Respondent.

Marks & Acalin, Ronald A. Marks; and Susan A. Beytin for Real Party in Interest.

OPINION

**CROSKEY, J.**—The petition before us involves the uninsured motorist provisions in a motor vehicle policy of insurance. Pursuant to a directive in Insurance Code section 11580.2, subdivision (f),[1] the subject insurance

---

[1] Unless otherwise indicated, all references herein to statutes are to the Insurance Code.

The provisions of section 11580.2, subdivision (f), govern both uninsured and underinsured claims. (*Chrisman v. Superior Court* (1987) 191 Cal.App.3d 1465, 1469 [236 Cal.Rptr. 703].) An underinsured motor vehicle is one "that is an insured motor vehicle but insured for an amount that is less than the uninsured motorist limits carried on the motor vehicle of the injured person." (§ 11580.2, subd. (p)(2).)

In this case, the insured's uninsured motorist policy limits exceed the statutory minimum ($15,000/$30,000) under the Financial Responsibility Law (Veh. Code, § 16020 et seq.), and

contract between the insurer and the insured in this case contains a provision that (a) both parties must decide by agreement whether (1) the insured is legally entitled to collect damages from the owner or driver of the uninsured motor vehicle, and if so entitled, (2) what amount of damages the insured is entitled to collect from such owner or driver, and (b) if the insured and insurer cannot come to an agreement on those questions, then the questions shall be decided by arbitration.[2]

We are asked to decide whether the insurer of someone who is involved in an accident with the owner or driver of an uninsured motor vehicle is required to arbitrate, with its insured, the *amount of damages* the insured is legally entitled to collect from such owner or driver if the insurer has already paid to its insured the full amount of benefits possible under the terms of the uninsured motorist policy provisions. Specifically, the insured in this case has taken the position that the insurer "had an opportunity to settle this case for [uninsured motorist] policy limits and chose not to do so in a timely fashion [and is] now afraid to have an arbitrator place a value on the case as such award may exceed [the insured's uninsured motorist] policy limits [which] could expose [the insurer] to an excess judgment in excess of [its] policy limits."

■ As more fully discussed below, the insured argues that the amount of damages caused by the uninsured driver involved in her accident is relevant in determining the amount of damages, if any, which could be awarded to her in a suit against the insurer for bad faith in settling her uninsured motorist claim, and therefore the amount of the uninsured motorist's liability should be arbitrated. This argument ignores the fact that even if there was bad faith in settling the insured's uninsured motorist claim, any damages to which she might be entitled must arise from, and be the result of, the insurer's bad faith conduct. Thus, the personal injury and property damage caused *by the accident* are not relevant where the insurer has in fact paid full policy benefits.

therefore she is entitled to underinsured motorist benefits if she is injured in an accident by a negligent driver covered by liability insurance in an amount less than the policy limits set out in her own policy.

Hereinafter, we refer to uninsured and underinsured vehicles and claims as uninsured vehicles and claims, leaving the reader to distinguish between them from the context of our discussion.

[2] The arbitration award, or a judgment confirming it, is not binding in an action filed by the insured against the uninsured motorist to recover damages stemming from the accident on which the arbitration is based. (§ 11580.2, subd. (f).) When the insured's injuries exceed the limits of his or her uninsured motorist coverage, the arbitrator may not award an amount greater than such policy limits. (*Cothron v. Interinsurance Exchange* (1980) 103 Cal.App.3d 853, 860 [163 Cal.Rptr. 240].)

■ It is clear that the provisions for arbitration in the parties' insurance contract, and in subdivision (f) of section 11580.2, address those situations where the issues of the uninsured motorist's liability and/or the amount of the insured's damages resulting from such liability *remain to be decided*, so that the insurer can determine how much, if anything, to pay under the uninsured motorist provisions of the policy. Here, by the time the insured filed her petition to compel arbitration, the insurer had already paid its policy limits to her. Thus, by that time, the directives in the insurance contract and in section 11580.2, subdivision (f) for arbitration had effectively been rendered moot and therefore arbitration is unnecessary since the arbitrator cannot award more than the policy limits (see fn. 2, *ante*).

We therefore will grant the petition for writ relief filed by the insurer and direct the trial court to vacate its order of arbitration.[3]

## *BACKGROUND OF THE CASE*

According to the record, the insured in this case, real party in interest Barbara Balen (Balen), was rear-ended in a chain reaction accident while stopped at a stop light. She was the middle car, and thus was hit from behind and pushed into the car in front of her. Her motor vehicle insurance policy with petitioner State Farm Mutual Automobile Insurance Company (State Farm) provides for uninsured motorist protection in the amount of $100,000 per person, and a total of $300,000 per accident. On March 18, 2003, Balen's attorney notified State Farm that Balen would be making an uninsured motorist claim under her policy.

On April 8, 2003, Balen's attorney wrote to State Farm informing it that Balen had suffered extensive injuries, as had her car, and thus Balen was making a policy limits demand (less credit for the uninsured driver's $15,000 contribution, pursuant to the terms of Balen's policy), to be paid by State Farm on or before May 8, 2003. In a May 7 reply, State Farm informed the attorney that it was not in a position to accept a policy limits offer. The next day, Balen's attorney wrote to State Farm, withdrawing Balen's offer to settle her claim for policy limits and demanding that State Farm arbitrate. State Farm wrote back saying it was turning the claim over to its attorneys for resolution.

On June 12, 2003, State Farm's attorney wrote to Balen's attorney, stating that State Farm would conduct discovery prior to scheduling arbitration, and

---

[3] While an order directing parties to arbitrate is not appealable, such order can be reviewed by means of a petition for writ relief. (Code Civ. Proc., § 1294; *Gordon v. G.R.O.U.P., Inc.* (1996) 49 Cal.App.4th 998, 1004, fn. 8 [56 Cal.Rptr.2d 914].)

asking for a list of proposed arbitrators, as well as a list of any medical providers that had treated Balen and of which State Farm was not already aware. Balen's attorney submitted a list of proposed arbitrators to State Farm's counsel on June 26 and August 27, and on September 10, the two attorneys agreed on a person to be the single arbitrator.

In a June 26, 2003 letter, Balen's attorney gave notice that because State Farm did not accept Balen's April 8 letter offering to settle for a policy limits payment to her by May 8, and because Balen then withdrew such offer, her "demand for settlement is presently $150,000. By rejecting our offer to settle within the policy limits, State Farm has opened it's [*sic*] policy up." In a July 18, 2003 letter to State Farm's attorney, Balen's attorney argued that although an arbitrator could not award Balen any more than her policy limits, it would be within the arbitrator's discretion "to make a finding of the total value of the case" and "[s]hould the arbitrator determine that the value of Mrs. Balen's case exceeds the policy limits, she would have an absolute right to sue State Farm for that sum, plus any other damages she's suffered. This would have the same effect as 'opening up the insurance policy'."

On November 10, 2003, State Farm's attorney wrote to Balen's counsel saying that he had completed discovery of Balen's medical claims and based on his discussion with claims personnel at State Farm, the insurer would pay the uninsured motorist policy limits ($100,000 less the $15,000). The attorney added that payment of such sum "will, in effect, resolve the UIM claim of your client." On November 19, Balen's attorney received a check from State Farm in the amount of $85,000. There was no release enclosed with the check, the check did not contain language indicating it was in full settlement of Balen's claim, and no release was ever requested. However, the cover letter from State Farm's attorney stated: "Enclosed you will find the settlement draft in the amount of $85,000."

In response, the next day, November 20, Balen's attorney wrote back to State Farm's attorney saying Balen's claim had not been settled by the check since Balen's offer to settle for $85,000 had been rescinded by her, in writing, months earlier. Nevertheless, said her attorney, "[i]f you wish for us to keep the $85,000 and allow us to preserve our rights to an excess award against State Farm at a later time, then such is fine with us. This late gesture may help State Farm to avoid an even greater adverse judgment. Please clearly let me know what you want us to do."

Thereafter, the attorneys noted in letters to each other their disagreement as to whether Balen was entitled to have an arbitrator "place a value on her case" (her attorney's words) given that State Farm had already paid its policy limits, and State Farm indicated it would not arbitrate. Additionally, Balen's

attorney indicated his intent to cash the $85,000 check, and his view that the check represented only a partial settlement of Balen's claim.

Balen filed a petition in the Superior Court of Los Angeles to compel arbitration. The trial court's minute order on the petition states in part that the only issue raised was whether Balen had a contractual right to arbitration. The court determined she did have such a right, granted her petition, and ordered the parties to arbitrate.

Thereafter, State Farm filed a petition with this court, seeking a writ directing the trial court to vacate the order compelling arbitration. We issued an order to show cause directing the parties to appear before this court to argue the merits of the issues raised by State Farm's petition.

## *DISCUSSION*

1. *There Is No Controversy to Be Arbitrated.*

    a. *The Dollar Amount of Balen's Accident Damages Is No Longer Relevant Given State Farm's Policy Limits Payment*

■ Section 1281.2 of the Code of Civil Procedure provides that except in circumstances not relevant here, a court shall order arbitration if there is an agreement to arbitrate *a controversy.* The provisions of both the parties' contract of insurance, and section 11580.2, subdivision (f), provide for arbitration when the parties cannot agree on (that is, when there is a controversy over) (1) whether Balen is legally entitled to collect damages from the uninsured motorist, or (2) the amount of such damages. Neither of those two matters to be arbitrated can be at issue in this case now because State Farm has paid the uninsured motorist limits of its policy. By paying policy limits, State Farm essentially admitted (1) the liability of the uninsured driver and (2) the amount of the damages to which Balen would be entitled from the uninsured driver, at least up to the policy limits. As noted in footnote two, an arbitrator, even if it heard these issues, could not award any greater relief. (*Cothron v. Interinsurance Exchange, supra,* 103 Cal.App.4th at p. 860.)

Therefore, *there is no controversy to be arbitrated here.* The amount of Balen's damages attributable to the accident itself that is over and above the uninsured motorist policy limits has no relevance, and there is no agreement to arbitrate irrelevant matters. "[T]here is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate and which no statute has made arbitrable." (*Freeman v. State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 481 [121 Cal.Rptr. 477, 535 P.2d 341].)

It is true that in *Fisher v. State Farm Mut. Auto. Ins. Co.* (1966) 243 Cal.App.2d 749, 751 [52 Cal.Rptr. 721], the court stated that the issues as to whether the insured was legally entitled to recover damages from the uninsured motorist and if so, the amount of such damages "relate clearly to the liability of the uninsured motorist to the insured and not to the amount of money which the insurance company must pay to the insured under the uninsured motorist coverage." However, the *Fisher* court was addressing a question whether money paid, or to be paid, by the insurer as and for medical coverage was something to be taken into consideration *by the arbitrator* in making his or her award. Here, the factoring of the uninsured motorist's contribution of $15,000 into the policy limits of $100,000 and the payment of the difference, the $85,000 policy limits, had already been accomplished by State Farm when Balen sought arbitration. Thus, at that point in time, the amount of the uninsured driver's liability to Balen was no longer a litigable issue at the time the trial court was presented with Balen's petition for arbitration.

Moreover, in *Cothron v. Interinsurance Exchange, supra*, 103 Cal.App.3d 853, where an insured moved to vacate an uninsured motorist arbitration award because the arbitrator did not specify an *exact* amount of damages for which the uninsured motorist would be liable but rather simply determined that the total damages suffered by the insured far exceeded the policy limits of the uninsured motorist coverage, the reviewing court said that the arbitrator's decision "was sufficient, as it disposed of all the issues and completely determined the controversy. The arbitrator was not required to find the entire damages which the insured was entitled to recover from the owner or operator of the uninsured motor vehicle." (*Id.* at pp. 857, 859.) The arbitrator is required to find on all issues necessary for the arbitrator's ultimate decision, that is, necessary to determine the controversy. (*Id.* at pp. 859–860.) Noting that an arbitrator in an uninsured motorist matter may not make an award that is in excess of the policy limits, the *Cothron* court said that since the arbitrator in that case had awarded the policy limit, "he determined the entire controversy. Nothing remained for the arbitrator to determine." (*Id.* at p. 860.) The court observed that the exact amount of the insured's damages "appears to be relevant to the extent the determination thereof is necessary to arrive at an award up to and including the policy limit . . . ." (*Id.* at p. 861.) In *Cothron*, as in the instant case, a policy limit payment had already been made. Nothing else needed to be decided. The *Cothron* court also observed that requiring an arbitrator in each uninsured motorist arbitration to reach a decision on the total amount of damages suffered by the insured because of the uninsured motorist's actions would frustrate the purpose of uninsured motorist arbitration itself, which is to provide both the insurer and insured with a prompt, inexpensive, and final method of determining liability and damages. (*Ibid.*)

### b. *The Dollar Amount of Accident Damages Is Not the Proper Measure of Damages in a Suit for an Insurer's Bad Faith Breach of Contract*

In *Neal v. Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 920 [148 Cal.Rptr. 389, 582 P.2d 980] (*Neal*), our Supreme Court addressed aspects of an insurer's duty to act fairly and in good faith with its insured. The insurer must accept reasonable offers to settle *third* party claims *against* its insured. Additionally, the insurer must act fairly and in good faith when it handles its own insured's claims, that is, claims *by* its insured, so that it does not unreasonably withhold payments that are due under the policy of insurance. If "an insurer 'fails to deal fairly and in good faith with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a·cause of action in tort for breach of an implied covenant of good faith and fair dealing.' [Citation.]" (*Ibid.*)

*Neal*, like the instant case, involved a claim under an uninsured motorist provision in a vehicle insurance policy and the insured's assertion that the insurer breached its implied covenant of good faith and fair dealing when it processed the uninsured motorist claim. A jury awarded compensatory damages for such breach (as well as punitive damages), and the insurer appealed the judgment entered after the plaintiff agreed to a remittitur when the insurer moved for a new trial.

The *Neal* court explained that in deciding damages in that case, the insurer's conduct should *not* be judged in the context of a refusal to settle a *third party* "within limits" claim, but rather in the context of a refusal to settle the *first party* claim of its own insured. The court explained that when an insurer, in violation of its duty to deal reasonably and fairly, refuses to settle a third party's claim against its own insured and such claim is within the limits of the policy, the insurer can be held liable, without regard to policy limits, for the full amount of any judgment that is later rendered against its insured in favor of that third party. Such liability is in keeping with the rule that "an insurer's breach of its duty of good faith and fair dealing renders it liable for any damages which are the proximate *result* of that breach." (*Neal, supra,* 21 Cal.3d at p. 925, italics added.) In the third party context, the amount of the injuries of the third party that exceed the limits of the insured's policy is relevant because the judgment against the insured in excess of policy limits is the result of the insurer's unwarranted refusal to settle within policy limits. That is, the liability of the insured for money in excess of his or her policy limits is reasonably considered the insured's damages for the insurer's prior unwarranted refusal to settle within policy limits. (*Ibid.*)

■ In the first party uninsured motorist context however, the insured has sustained damages (property and/or personal injury), occasioned by the vehicular accident itself, and those damages occur prior to the insurer's alleged breach of its duty of good faith and fair dealing. Thus, those damages "cannot be a proximate result of [any bad faith conduct], and therefore cannot serve as a proper measure of damages. Only damages proximately resulting from the breach—such as consequent economic loss or emotional distress, for example—are recoverable as compensation therefor." (*Neal, supra,* 21 Cal.3d at p. 925, italics omitted.) In *Neal,* the court made it clear that if an insured believes its insurer has breached its duties in handling an uninsured motorist claim, the damages from such alleged breach of the insurance contract are not related to the damages allegedly sustained by the insured from the accident itself. Therefore, if Balen is asserting, as she certainly appears to be, a right to arbitrate the total dollar amount of her accident injuries so that such determination can be used to demonstrate damages in a bad faith suit against State Farm, there would be no point to holding such an arbitration proceeding.

### 2. *Balen Is Not Entitled to an Arbitration in Order to Evaluate a Possible Bad Faith Suit*

■ Balen argues that without an arbitration of her uninsured motorist damages, she will be "severely prejudiced" because "she cannot evaluate a bad faith action before she files it and incurs substantial fees and costs in a trial." However, nothing in the language of section 11580.2, subdivision (f), shows that it has the dual purpose of facilitating the payment of uninsured motorist benefits and facilitating a decision whether to sue for bad faith. "A proceeding to compel arbitration is in essence a suit in equity to compel specific performance of a contract." (*Freeman v. State Farm Mut. Auto. Ins. Co., supra,* 14 Cal.3d at p. 479.) Here, State Farm has already paid the limit of the subject policy's uninsured motorist provisions. *Whether it paid in an untimely manner, or engaged in other claims-handling misconduct, is not an issue for the arbitrator.*

Balen's assertion that without arbitration she will have to wait until trial to "learn what a finder-of-fact thinks her UM damages are" is without merit since, as discussed above, (1) any bad faith damages that Balen might have suffered must have necessarily arisen *after* her insurer's alleged bad faith breach of the insurance contract occurred, and thus be a result thereof, and (2) the damages caused by the underinsured motorist are simply not relevant to any arbitrable issue *where the insurer has in fact fully paid policy benefits.*

Moreover, the negative comments made by Balen about State Farm's actions on her uninsured motorist claim suggest that the possibility of a bad

faith action has already been evaluated. For example, she states State Farm engaged in "dilatory conduct in handling [her] uninsured motorist claim" and "stonewall[ed]" her. She asserts, "it was undisputed that [she] was legally entitled to recover damages from the underinsured driver. It should have been clear to State Farm very early on that she was seriously injured and that her damages exceeded the $100,000 policy limits. . . . Very early in this eight-month period of delay State Farm was aware of the nature and severity of [her] injuries."

## DISPOSITION

The petition for writ of mandate is granted and a peremptory writ shall issue directing the trial court to vacate its order of March 30, 2004, and enter a new and different order denying real party in interest Balen's petition to compel arbitration. The order to show cause issued June 9, 2004 is discharged. State Farm is to recover its costs.

Klein, P. J., and Aldrich, J., concurred.