[No. B192186. Second Dist., Div. Five. Feb. 1, 2007.]

VIVID VIDEO, INC., et al., Plaintiffs and Respondents, v.
PLAYBOY ENTERTAINMENT GROUP, INC., et al., Defendants and
Appellants.

## Counsel

Sheppard, Mullin, Richter & Hampton, Louis M. Meisinger, Fred R. Puglisi and R. Anthony Young for Defendants and Appellants.

Bryan Cave, William I. Chertok, Ronald N. Jacobi and John W. Amberg for Plaintiffs and Respondents.

## Opinion

**TURNER, P. J.**—Defendants, Playboy Entertainment Group, Inc. (the group), and Playboy Enterprises, Inc., purport to appeal from a June 23, 2006 "Order on Motion to Compel Arbitration." Defendants expressly limited their motion to compel arbitration to the question whether it was for the court or the arbitrators to decide the arbitrability of the claims of plaintiffs, Vivid Video, Inc., and Vivid Video International, Inc. Defendants did not ask the trial court to decide whether any one or more of the causes of action in the complaint were subject to arbitration. Defendants argued the arbitrators, not the court, were to decide any question of arbitrability. In other words, defendants *only* sought an order compelling arbitration of the arbitrability

question. The order under review does not resolve the issue of whether some or all of the claims in plaintiffs' complaint were to be arbitrated. We conclude that because the issue of whether any claims are to be arbitrated remains unresolved, no appealable final judgment within the meaning of Code of Civil Procedure section 1294, subdivision (c) has been entered. Hence, we dismiss the appeal.

On July 6, 2001, plaintiffs and the group entered into two written agreements. First, plaintiffs and the group entered into an "Amendment to Current Output Agreements and New Output Agreement" (the output agreement). Second, plaintiffs and the group entered into a "Trademark License Agreement" (the license agreement). The agreements concerned motion pictures, videos, and similar matter licensed to the group.

The output agreement includes an arbitration clause. Article 8 of the output agreement provides in pertinent part: "8.1 <u>Alternate Dispute Resolution</u>. Any dispute arising out of or relating to this Agreement will be resolved in accordance with the procedures specified in this Article 8, which will be the sole and exclusive procedures for the resolution of any such disputes, except this Article 8 will not apply to the following disputes, which will be litigated in a court of law: [¶] 8.1.1 any dispute concerning the validity, ownership or control of the Vivid Marks; [¶] . . . [¶] 8.3 <u>Arbitration</u>. Except as otherwise expressly provided in Sections 8.1 and 8.10 [concerning the availability of equitable relief] of this Agreement, any controversy, dispute or claim under, arising out of, in connection with or in relation to this Agreement, including the negotiation, execution, interpretation, construction, coverage, scope, performance, non-performance, breach, termination, validity or enforceability of this Agreement will be settled, at the request of either party, by arbitration conducted in accordance with this Article 8 and the then existing rules for commercial arbitration of the American Arbitration Association . . . . The arbitration will be governed by the Federal Arbitration Act (9 U.S.C. §§ 1–16). The arbitration of such issues, including the determination of any amount of damages suffered by any party hereto by reason of the acts or omissions of either party, will be final and binding upon the parties to the maximum extent permitted by law." We refer to the foregoing arbitration provisions as "Article 8."

Similarly, article 11 of the license agreement provides in relevant part: "11.1 <u>Alternate Dispute Resolution</u>. Any dispute arising out of or relating to this Agreement will be resolved in accordance with the procedures specified in this Article 11, which will be the sole and exclusive procedures for the

resolution of any such disputes, except this Article 11 will not apply to the following disputes, which will be litigated in a court of law: [¶] (a) any dispute concerning the validity, ownership or control of the Vivid Marks . . . ." The American Arbitration Association's Commercial Arbitration Rules, which are referenced in Article 8 above, include provisions governing an arbitrator's jurisdiction. Rule 7 states in part: "(a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." (American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures, rule 7, as amended and effective Sept. 15, 2005 (Rule 7) (<http://www.adr.org/sp.asp?id=22440#R7> [as of Feb. 1, 2003]).)

Section 4.6.5 of the output agreement, which plaintiffs assert is controlling in terms of the merits of this appeal, states: "Remedies. Upon the occurrence of an Event of Default, Vivid may, in its sole discretion[,] but upon delivering not less than 5 Business Days written notice to [the group], exercise any or all of the following rights: [¶] (a) Notwithstanding the provisions of Article 8, file suit and obtain judgment to collect all amounts owing from [the group]; [¶] . . . [¶] (d) Terminate the Trademark License Agreement." Plaintiffs argue that the immediately foregoing provisions of section 4.6.5 create an exception to the article 8 arbitration provisions. "Event of Default" for purposes of section 4.6.5 is defined as follows: " 'Event of Default' means any of the following events that remain uncured at the time Vivid exercise remedies with respect to such events: (a) [the group] fails to make any cash payment due to Vivid under the terms of this Agreement within 90 days following the date the cash payment is due . . . ."

On April 21, 2006, Steven Hirsch, the president of Vivid Video, Inc., notified defendants as follows: "This letter is the exercise of certain rights under and pursuant to Section 4.6.5 of the [output agreement], based upon the occurrence of an Event of Default that remains uncured, in that [the group] has failed to make cash payments due to Vivid under the terms of the [output agreement] within 90 days following the date the cash payments were due. This letter shall constitute the 5 Business Days written notice required under Section 4.6.5 and the certain rights hereby exercised shall become effective on April 28, 2006, or 5 Business Days from the delivery of this letter, whichever is later. [¶] The certain rights Vivid hereby exercises under and pursuant to Section 4.6.5 of the Agreement are the following: [¶] (a) To file suit and obtain judgment to collect all amounts owing from [the group]; [¶] . . . [¶] (c) To terminate the Trademark License Agreement . . . ."

On April 27, 2006, Louis M. Meisinger, on behalf of the group, responded to Mr. Hirsch's letter by filing a demand for arbitration with the American Arbitration Association. The group also mailed a letter to the various attorneys for plaintiffs stating, among other things, that the group denied an "Event of Default" had occurred. The group tendered a $1.8 million check "in satisfaction of any inadvertent deficiency . . . ." along with Mr. Meisinger's letter.

Four days later, on May 1, 2006, plaintiffs filed the present action. Plaintiffs allege the group breached the output agreement by failing to make payments due and breached a good faith and fair dealing implied covenant. Plaintiffs also seek an accounting and a declaration the license agreement has been terminated. Specifically, plaintiffs allege the group agreed in the output agreement to: make "certain performance-based cash payments to Vivid based upon 'Gross Receipts' and 'Retail Receipts' for 'Video-on-Demand' sales"; keep an accurate set of books and records showing such gross receipts and retail receipts; allow plaintiffs to audit and inspect those books and records; pay interest on late payments; and, under certain circumstances, to "reimburse [plaintiffs] for [their] costs incurred to conduct the inspection and audit . . . ." Further, the complaint alleges "[The group] failed to make [the performance-based payments], many of which are more than 90 days past due" and plaintiffs exercised their right to file suit to collect the amounts owed and to terminate the license agreement.

Defendants filed a motion to compel arbitration. Defendants argued that under Article 8 and Rule 7(a), arbitrability was for the arbitrators to determine. Documentary evidence of the controversy between the parties was submitted in support of the motion. Plaintiffs opposed the motion and relied on section 4.6.5 of the output agreement.

As noted above, defendants' motion to compel arbitration of the arbitrability issue *only* was denied. On June 23, 2006, the trial court ruled: "[D]efendants have not sufficiently established the existence of an agreement to arbitrate the issues here in dispute. Plaintiffs have filed suit under the conditions set forth in Section 4.6.5 of the Output Agreement, and this right to file suit is unequivocally provided '[n]otwithstanding the provisions of Article 8.' Webster's Third New International Dictionary (1986) page 1545 defines 'notwithstanding' as 'without prevention or obstruction from or by,' and when applying this definition here, the plain language of the Output Agreement clearly circumscribes the arbitrator's otherwise broad authority to

resolve disputes concerning 'interpretation, construction, coverage, [and] scope' of the Agreement. [¶] . . . [T]he Output Agreement expressly provides for the right to file suit under Section 4.6.5 without any obstruction from any provision articulated in Article 8, including the provision that consigns the arbitrator the authority to resolve disputes concerning the application and interpretation of the Agreement. If defendants' position were to be accepted, the court would be forced to effectively read Section 4.6.5 out of the Agreement altogether. This is not the general rule governing judicial interpretation and construction of contracts. (See Civ. Code, § 1858.) [¶] As such, the court cannot conclude that the parties clearly and unmistakably agreed to arbitrate the issue of arbitrability with respect to the claims at issue here." As noted, the June 23, 2006 order does not direct the arbitration of any cause of action raised in plaintiffs' complaint. Nor does it deny the arbitrability of any claim. The trial court simply held that it and not the arbitrators will decide arbitrability.

Preliminarily, we must consider the application of the United States Arbitration Act. As noted above, the parties expressly agreed, "The arbitration will be governed by the Federal Arbitration Act (9 U.S.C. §§ 1–16)." Notwithstanding that contractual provision, state procedural rules govern the determination of defendants' motion to compel arbitration. (*Southland Corp. v. Keating* (1984) 465 U.S. 1, 16, fn. 10 [79 L.Ed.2d 1, 104 S.Ct. 852]; *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 409–410 [58 Cal.Rptr.2d 875, 926 P.2d 1061].)

■ The question before us then is whether the trial court's ruling as to *who decides* arbitrability is a final determination giving rise to a right to appeal. It bears emphasis this issue arises in the context of where the trial court will decide in the future which, if any, of plaintiffs' causes of action are to be arbitrated. Subject to certain narrow limitations, there is no constitutional right to appeal. (*Lindsey v. Normet* (1972) 405 U.S. 56, 77 [31 L.Ed.2d 36, 92 S.Ct. 862]; *Leone v. Medical Board* (2000) 22 Cal.4th 660, 668 [94 Cal.Rptr.2d 61, 995 P.2d 191]; *Powers v. City of Richmond* (1995) 10 Cal.4th 85, 109 [40 Cal.Rptr.2d 839, 893 P.2d 1160] (lead opn. of Kennard, J.); *Trede v. Superior Court* (1943) 21 Cal.2d 630, 634 [134 P.2d 745].) The California Supreme Court has repeatedly held that the right to appeal is wholly statutory. (*Powers v. City of Richmond, supra,* 10 Cal.4th at p. 109; *Agricultural Labor Relations Bd. v. Tex-Cal Land Management, Inc.* (1987) 43 Cal.3d 696, 705 [238 Cal.Rptr. 780, 739 P.2d 140]; *People v. Chi Ko Wong* (1976) 18 Cal.3d 698, 709 [135 Cal.Rptr. 392, 557 P.2d 976], disapproved on another point in *People v. Green* (1980) 27 Cal.3d 1, 34–35 [164 Cal.Rptr. 1, 609 P.2d 468].) A proper notice of appeal from an appealable order is jurisdictional. (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696 [107 Cal.Rptr.2d 149, 23 P.3d 43]; *Jennings v. Marralle* (1994) 8 Cal.4th 121, 126 [32 Cal.Rptr.2d 275, 876 P.2d 1074].) The parties cannot create

appellate jurisdiction by consent, waiver, or estoppel. (*Hollister Convalescent Hosp., Inc. v. Rico* (1975) 15 Cal.3d 660, 666 [125 Cal.Rptr. 757, 542 P.2d 1349]; *Estate of Hanley* (1943) 23 Cal.2d 120, 123 [142 P.2d 423].)

■ Pursuant to statute, the right to appeal is generally from a final judgment or order. As we have explained: "Normally, in civil cases, there can only be an appeal from a final judgment. The California Supreme Court has noted: 'An appeal from a judgment that is not final violates the one final judgment rule and must therefore be dismissed (e.g., *Mather v. Mather* (1936) 5 Cal.2d 617, 618 [55 P.2d 1174]; *Cobb v. University of So. California* (1996) 45 Cal.App.4th 1140, 1146 [53 Cal.Rptr.2d 71]) . . . .' (*Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 307 [63 Cal.Rptr.2d 74, 935 P.2d 781].) The nature of the one final judgment rule was described in *Sullivan* by the Supreme Court as follows: 'In its most fundamental sense, "finality" is an attribute of every judgment at the moment it is rendered; indeed, if a judicial determination is not immediately "final" in this sense it is not a judgment, no matter what it is denominated. The Legislature has incorporated this meaning of finality into the very definition of a judgment: "A judgment is the *final* determination of the rights of the parties in an action or proceeding." (Code Civ. Proc.,[1] § 577, italics added.) And we have explained the meaning as follows: "A judgment is final 'when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined.' " (*Doudell v. Shoo* (1911) 159 Cal. 448, 453 [114 P. 579]; accord, *Lyon v. Goss* (1942) 19 Cal.2d 659, 670 [123 P.2d 11]; *Olson v. Cory* (1983) 35 Cal.3d 390, 399 [197 Cal.Rptr. 843, 673 P.2d 720].) [¶] Finality in this sense not only makes a judicial determination a judgment, it also makes that judgment appealable. As we recently observed, "A judgment that leaves no issue to be determined except the fact of compliance with its terms is appealable." (*California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 9 [270 Cal.Rptr. 796, 793 P.2d 2].) Indeed, recognizing that this meaning of finality is so fundamental that it is essentially redundant to speak of a *"final* judgment" in this sense, the Legislature no longer provides in the basic statute authorizing appeals from the superior court that such an appeal may be taken "From a *final* judgment entered in an action, or special proceeding" (former . . . § 963, subd. 1, italics added); the statute now provides simply that an appeal may be taken "From a judgment" (. . . § 904.1, subd. (a)(1)). The meaning is the same.' (*Sullivan v. Delta Air Lines, supra,* 15 Cal.4th at p. 304, original italics.) In determining whether a judgment is final, its substance governs, not its label or form. (*Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 698–699 [63 Cal.Rptr. 724,

---

[1] All further statutory references are to the Code of Civil Procedure except where otherwise noted.

433 P.2d 732]; *Joyce v. Black* (1990) 217 Cal.App.3d 318, 321 [266 Cal.Rptr. 8].)" (*Rubin v. Western Mutual Ins. Co.* (1999) 71 Cal.App.4th 1539, 1546 [84 Cal.Rptr.2d 648].)

The right to appeal in a civil action is governed by section 904.1. Under section 904.1, subdivision (a)(1), an appeal lies, "From a judgment, except . . . an interlocutory judgment . . . ." Appeals in arbitration matters are governed by section 1294: "An aggrieved party may appeal from: [¶] (a) An order dismissing or denying a petition to compel arbitration. [¶] (b) An order dismissing a petition to confirm, correct or vacate an award. [¶] (c) An order vacating an award unless a rehearing in arbitration is ordered. [¶] (d) A judgment entered pursuant to this title. [¶] (e) A special order after final judgment."

Under section 1294, appealable arbitration orders require finality. The Court of Appeal has held: "It is quite obvious that the Legislature's philosophy and intent in drafting section 1294 was that there should be no appellate consideration of intermediate rulings in arbitration disputes if the superior court was of the view that there should be initial or further proceedings in arbitration. Thus, most significantly, an order compelling arbitration is not appealable. (*Lesser Towers, Inc. v. Roscoe-Ajax Constr. Co.* [(1969)] 271 Cal.App.2d 675, 692–693 [77 Cal.Rptr. 100].) Similarly the Legislature expressly excepted orders vacating awards but [directing] rehearings in arbitration from a roster of appealable rulings in section 1294." (*Long Beach Iron Works, Inc. v. International Molders etc. of North America, Local 374* (1972) 26 Cal.App.3d 657, 659 [103 Cal.Rptr. 200].) An intermediate ruling in an arbitration dispute that contemplates further proceedings *in arbitration* is not appealable. (§ 1294, subd. (c); *Long Beach Iron Works, Inc. v. International Molders etc. of North America, Local 374, supra,* 26 Cal.App.3d at pp. 658–659 [order vacating award and resubmitting controversy to different arbitrator nonappealable]; see also *Marcus & Millichap Real Estate Investment Brokerage Co. v. Woodman Investment Group* (2005) 129 Cal.App.4th 508, 514–515 [28 Cal.Rptr.3d 584] [order vacating arbitration award without directing a rehearing was final for purposes of appealability]; *Sy First Family Ltd. Partnership v. Cheung* (1999) 70 Cal.App.4th 1334, 1345 [83 Cal.Rptr.2d 340] [order denying petition to confirm initial arbitration award constituted an interlocutory rather than a final ruling because the court remanded for further arbitration proceedings].) Requiring finality in appealable arbitration orders is consistent both with the language of section 1294 and the general prohibition of appeals from interlocutory nonfinal judgments in section 904.1, subdivision (a). (See *Sjoberg v. Hastorf* (1948) 33 Cal.2d 116, 117–119 [199 P.2d 668] [discussing finality in arbitration context]; *State Farm Fire & Casualty v. Hardin* (1989) 211 Cal.App.3d 501, 505–506 [259 Cal.Rptr. 433] [order compelling arbitration is nonappealable because it does not resolve all of the issues in controversy]; see also *Green Tree Financial*

*Corp.-Ala. v. Randolph* (2000) 531 U.S. 79, 82 [148 L.Ed.2d 373, 121 S.Ct. 513] [order compelling arbitration and dismissing underlying claims was "final" appealable decision within meaning of United States Arbitration Act, 9 U.S.C. § 16(a)(3)].) This finality reasoning likewise applies to bar an appeal from an arbitration ruling that, as here, contemplates further proceedings in the trial court. The present order merely determines *who decides* arbitrability for purposes of further proceedings in the trial court as to *what issues* are arbitrable. It leaves the arbitrability of the causes of action in the complaint for future determination in the trial court. The order does not finally determine all issues before the trial court. The order is not sufficiently final to give rise to a right to appeal.

Further, our holding is consistent with the policy reasons underlying the one final judgment rule. In *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 741, footnote 9 [29 Cal.Rptr.2d 804, 872 P.2d 143], our Supreme Court identified the justifications for the one final judgment rule: "There are sound reasons for the one final judgment rule. As explained in *Kinoshita v. Horio* [(1986)] 186 Cal.App.3d 959 [231 Cal.Rptr. 241], '[t]hese include the obvious fact that piecemeal disposition and multiple appeals tend to be oppressive and costly. [Citing, inter alia, *Knodel v. Knodel* [(1975)] 14 Cal.3d 752, 766 [122 Cal.Rptr. 521, 537 P.2d 353].] Interlocutory appeals burden the courts and impede the judicial process in a number of ways: (1) They tend to clog the appellate courts with a multiplicity of appeals. . . . (2) Early resort to the appellate courts tends to produce uncertainty and delay in the trial court. . . . (3) Until a final judgment is rendered the trial court may completely obviate an appeal by altering the rulings from which an appeal would otherwise have been taken. [Citations.] (4) Later actions by the trial court may provide a more complete record which dispels the appearance of error or establishes that it was harmless. (5) Having the benefit of a complete adjudication . . . will assist the reviewing court to remedy error (if any) by giving specific directions rather than remanding for another round of open-ended proceedings.' (186 Cal.App.3d at pp. 966–967.)" (See *Mid-Wilshire Associates v. O'Leary* (1992) 7 Cal.App.4th 1450, 1455 [9 Cal.Rptr.2d 862] ["[s]trong" policy reasons support the one final judgment rule in the arbitration appeal context].) Under defendants' analysis, if we were to conclude that the arbitrability issue was to be decided solely by the trial court, upon issuance of our remittitur, a new round of litigation would proceed in which the trial court would decide whether all or some of plaintiffs' causes of action were to be arbitrated. Under these potential circumstances, after we ruled in this appeal, defendants would file another petition to compel arbitration. In fact, during oral argument, defense counsel candidly explained if we concluded the arbitrability issue was to be decided by the trial court, another petition to compel arbitration would be filed. And defendants' papers filed in the trial court expressly state that if the arbitrability issue is to be decided by

the trial court, they will seek to litigate whether the merits of all or some of plaintiffs' claims are to be arbitrated.

Defendants' view of the law could result in two appeals on the issue of whether the dispute is to be arbitrated, which is inconsistent with the policies underlying the one final judgment rule our Supreme Court identified in *Morehart*. The analysis proposed by defendants creates two possible appeals, which ultimately address the same issue—will their dispute, or parts of it, be arbitrated? Also, this appeal has caused delay in the trial court. Further, the ultimate issue—will this dispute be arbitrated in whole or in part—has yet to be decided. And it is entirely possible that a final judgment will obviate the ultimate issue of whether the dispute will be arbitrated partially or in its entirety. Additionally, once the entire record of the parties' expectations is available, it is possible we will be able to assess the issues with greater thoroughness. Our point is that the purposes of the one final judgment rule identified in *Morehart* are satisfied by our holding.

Two final points warrant comment. To begin with, at oral argument, defense counsel argued that his clients' right to arbitrator determination of the arbitrability issue would be frustrated if the trial court proceeded to decide what causes of actions must be arbitrated. In this regard, defense counsel adverts to the "speedy and relatively inexpensive means of dispute resolution" provided by arbitration. (See *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1204 [8 Cal.Rptr.3d 517, 82 P.3d 727]; *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 [10 Cal.Rptr.2d 183, 832 P.2d 899].) However, even if defendants cannot appeal at present, they could have filed a mandate petition challenging the trial court's ruling. They would have thereby secured prompt appellate review of the trial court's ruling. We would have given serious and judicious attention to such a mandate petition. And they remain free even now to file such a mandate petition, which will be promptly and earnestly reviewed. (See *State Farm Mutual Automobile Ins. Co. v. Superior Court* (2004) 123 Cal.App.4th 1424, 1428 [20 Cal.Rptr.3d 850] [nonappealable order compelling arbitration reviewed via writ petition]; Eisenberg, Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2006) ¶ 15:48, p. 15-30 (rev. #1, 2006).) Finally, nothing in our opinion should be construed as a statement of views as to how the trial court should resolve defendants' petition to compel arbitration which will ensue upon issuance of our remittitur. We leave this matter in the good hands of the trial court and the attorneys litigating this matter.

The appeal is dismissed. The parties are to bear their own costs on appeal.

Kriegler, J., concurred.

**MOSK, J.,** Dissenting.—I respectfully dissent.

In article 8 of their agreement (Article 8), the parties agreed to arbitrate "any controversy, dispute or claim under, arising out of, in connection with or in relation to this agreement," including disputes relating to the "interpretation, construction, coverage, [or] scope" of that agreement. The parties incorporated into their agreement to arbitrate the Commercial Arbitration Rules of the American Arbitration Association (AAA), which provide in rule 7(a) that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." The parties also specified that the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) would govern their arbitration agreement. Because these proceedings are in a California state court, generally California procedural law, including state law governing appealability, applies. (*Muao v. Grosvenor Properties, Ltd.* (2002) 99 Cal.App.4th 1085, 1090–1093 [122 Cal.Rptr.2d 131].)

Plaintiff filed an action against defendants in the Los Angeles Superior Court. Defendants then commenced an arbitration and moved in the trial court to compel arbitration of the limited issue of the arbitrability of the dispute and to stay the action pending resolution of the arbitrability issue. (Code Civ. Proc., § 1281.4.)[1] Plaintiff contended that a provision in section 4.6.5 of the agreement, which excepts certain issues from arbitration (the "carve out" provision), precluded arbitration of the issue of arbitrability. Plaintiff argued that the parties had not agreed "clearly and unmistakably" to have the arbitrator decide arbitrability, and therefore the trial court, rather than the arbitrator, should determine arbitrability. (*First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 944 [131 L.Ed.2d 985, 115 S.Ct. 1920] ["Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so"].) Defendants asserted that, by incorporating the AAA commercial arbitration rules into the arbitration provision, the parties evidenced their clear and unmistakable agreement that the arbitrator should decide arbitrability. (See *Contec Corp. v. Remote Solution, Co., Ltd.* (2d Cir. 2005) 398 F.3d 205, 208 [under FAA, "when . . . parties explicitly incorporate [arbitration] rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator"].)

The trial court denied defendants' motion to compel arbitration of the issue of arbitrability, concluding that defendants had "not sufficiently established the existence of an agreement to arbitrate the issues here in dispute." The trial court reasoned that plaintiff had "filed suit under the conditions set forth" in

---

[1] All statutory references are to the Code of Civil Procedure unless specified otherwise.

the "carve out" provision, section 4.6.5. Because a suit under section 4.6.5 could proceed "without any obstruction from" the arbitration provision in Article 8, the parties had not "clearly and unmistakably agreed to arbitrate the issue of arbitrability with respect to the claims at issue here."

To reach that decision, the trial court necessarily interpreted, construed and determined the scope of the arbitration provision. Defendants contend that by doing so, the trial court erred, for the parties agreed that the arbitrator was to interpret, construe, and determine the scope of the agreement, including the arbitration clause. Regardless of the ultimate merit of defendants' position, it is based on a reasonable interpretation of the parties' agreement. The trial court's order thus denied defendants' petition to compel arbitration of an issue that defendants reasonably contended was subject to the parties' arbitration agreement.

The trial court's order is appealable. Section 1294, subdivision (a) provides that "[a]n order dismissing or denying a petition to compel arbitration" is appealable.[2] Section 1294 does not specify that only a *final* order dismissing or denying a petition to compel arbitration is appealable, nor does it state that only an order dismissing or denying a petition to compel arbitration *of all potentially arbitrable claims* is appealable. The plain language of section 1294 permits appellate review of "[a]n order dismissing or denying a petition to compel arbitration." That would include an order denying a petition to compel arbitration of a specific issue, including the issue of arbitrability.

The practical and policy considerations served by the general rule limiting appellate jurisdiction to the review of final judgments are not the same considerations served by section 1294. Both the FAA and the California Arbitration Act (§ 1281 et seq.) promote arbitration as an alternative to litigation. As we recently observed, "[t]he purpose and effect of [these enactments] is to encourage the arbitration of civil disputes outside the judicial forum." (*Konig v. U-Haul Co. of California* (2006) 145 Cal.App.4th 1243, 1250 [52 Cal.Rptr.3d 244]; see also *Southland Corp. v. Keating* (1984) 465 U.S. 1, 10 [79 L.Ed.2d 1, 104 S.Ct. 852]; *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 97 [99 Cal.Rptr.2d 745, 6 P.3d 669].)

This state's policy supporting arbitration is reflected in the structure of section 1294, which is comparable to section 16 of the FAA (9 U.S.C. § 16).

---

[2] Section 1294 provides: "An aggrieved party may appeal from: [¶] (a) An order dismissing or denying a petition to compel arbitration. [¶] (b) An order dismissing a petition to confirm, correct or vacate an award. [¶] (c) An order vacating an award unless a rehearing in arbitration is ordered. [¶] (d) A judgment entered pursuant to this title. [¶] (e) A special order after final judgment."

That provision in the FAA[3] "generally permits immediate appeal of orders hostile to arbitration, whether the orders are final or interlocutory, but bars appeal of interlocutory orders favorable to arbitration." (*Green Tree Financial Corp.-Ala. v. Randolph* (2000) 531 U.S. 79, 86 [148 L.Ed.2d 373, 121 S.Ct. 513].) To further that policy, section 1294 makes appealable orders denying petitions to arbitrate, superseding prior law. For example, *Berman v. Renart Sportswear Corp.* (1963) 222 Cal.App.2d 385 [35 Cal.Rptr. 218], held that section 1294, subdivision (a) superseded the California Supreme Court's decision in *Sjoberg v. Hastorf* (1948) 33 Cal.2d 116 [199 P.2d 668], which had held that an order denying a defendant's petition to arbitrate in a breach of contract action was a nonappeable, interlocutory order. Section 1294, subdivision (a), the *Berman* court held, changed the law, and permitted such an appeal. (*Berman v. Renart Sportswear Corp., supra*, 222 Cal.App.2d at p. 387.)

California courts addressing issues of appealability under section 1294 thus focused on whether the order appealed from is consistent with or hostile to the policy promoting arbitration. For example, in *Porter v. United Services Automobile Assn.* (2001) 90 Cal.App.4th 837 [108 Cal.Rptr.2d 860], the parties agreed that the dispute was arbitrable; the only issue was whether the arbitration should proceed in California or New Jersey. The trial court denied the plaintiff's petition to compel arbitration in California and "advised" counsel "to proceed forthwith to arbitration in New Jersey." (*Id.* at p. 839.) This division held that "the order did not deny the propriety of arbitration altogether," but "did specifically deny the petition in so far as it sought to compel arbitration as requested by plaintiff—that is, arbitration in California." Accordingly, we held that "the order falls within the plain language of section 1294, subdivision (a), as an order 'denying a petition to compel arbitration.' " (*Id.* at p. 840.)

The court in *Henry v. Alcove Investment, Inc.* (1991) 233 Cal.App.3d 94, 99–100 [284 Cal.Rptr. 255], held that section 1294, subdivision (a) permitted an appeal from an order staying arbitration under section 1281.2 because such an order was the "functional equivalent of an order refusing to compel arbitration." In *Sanders v. Kinko's, Inc.* (2002) 99 Cal.App.4th 1106, 1109–1110 [121 Cal.Rptr.2d 766], overruled on other grounds by *Green Tree Financial Corp.-Ala. v. Randolph, supra*, 531 U.S. 79, the court held that

---

[3] Title 9 United States Code section 16 provides: "(a) An appeal may be taken from—[¶] (1) an order—[¶] (A) refusing a stay of any action under section 3 of this title, [¶] (B) denying a petition under section 4 of this title to order arbitration to proceed, [¶] (C) denying an application under section 206 of this title to compel arbitration, [¶] (D) confirming or denying confirmation of an award or partial award, or [¶] (E) modifying, correcting, or vacating an award . . . [¶] . . . [¶] (b) Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order—[¶] . . . [¶] (2) directing arbitration to proceed under section 4 of this title . . . ."

section 1294, subdivision (a) permitted an appeal from the trial court's order denying a petition to arbitrate "without prejudice," even though the trial court stated its intention to address "the question of which/whose claims are subject to arbitration under the FAA" after it had "take[n] care of class certification issues."

Although none of these cases is directly on point, they suggest that it is not only an order that constitutes an outright denial by the trial court of a petition to compel arbitration of the dispute that is appealable under section 1294. Rather, the key consideration is whether the order would, if erroneous, adversely affect the parties' substantial interests in arbitrating their dispute. The order in this case does that.

Although defendants' motion to compel arbitration was limited to the issue of arbitrability, the trial court's decision denying the motion appears to foreclose arbitration of *any* issue in the lawsuit. The trial court denied defendants' motion on the ground that the plaintiff's action was filed "under Section 4.6.5," and that actions under section 4.6.5 could proceed "without any obstruction from any provision articulated in Article 8, including the provision that consigns the arbitrator the authority to resolve disputes concerning the application and interpretation of the agreement." It seems to me logically the trial court cannot now determine that any issue in plaintiff's action is arbitrable, because to do so would mean that any such issue is subject to Article 8 and its requirement that the arbitrator determine the issue of arbitrability. In effect, therefore, the trial court *has* denied defendant's petition to compel arbitration of plaintiff's claims.[4]

The trial court's order denies defendants one benefit of their bargain under the arbitration agreement: the right to have an arbitrator determine arbitrability in the first instance. Even if, on a future appeal, defendants ultimately prevail on the issue of who decides arbitrability, defendants already will have been forced to incur the expense and delay of having to litigate the arbitrability of plaintiff's claims in a judicial forum. This will almost certainly involve substantial and expensive motion practice. Section 1294, subdivision (a), permits appeals from orders denying arbitration precisely to avoid such potentially unnecessary proceedings. "Contracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts. Such a course could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate." (*Southland Corp. v. Keating, supra,* 465 U.S. at p. 7; see *Henry v. Alcove Investment, Inc., supra,* 233 Cal.App.3d at pp. 99–100.)

---

[4] Defendants assert that the trial court's decision leaves room to argue that plaintiff's substantive claims are arbitrable. Nothwithstanding my analysis, I do not intend to foreclose counsel's ingenuity in formulating any such argument.

Apart from the expense and delay, the issue of who decides arbitrability is not insignificant. As the United States Supreme Court explained, "Although the question is a narrow one, it has a certain practical importance. That is because a party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of its dispute (say, as here, its obligation under a contract). But, where the party has agreed to arbitrate, he or she, in effect, has relinquished much of that right's practical value. The party still can ask a court to review the arbitrator's decision, but the court will set that decision aside only in very unusual circumstances. [Citations.] Hence, who— court or arbitrator—has the primary authority to decide whether a party has agreed to arbitrate can make a critical difference to a party resisting arbitration." (*First Options of Chicago, Inc. v. Kaplan, supra*, 514 U.S. at p. 942.) The same consideration would apply to the party seeking arbitration.

Finally, there is no authority that makes nonappealable an order denying a petition to arbitrate a specific issue arguably covered by the arbitration clause. Here, the parties clearly and unmistakably agreed that the arbitrator, rather than the court, decides the issue of arbitrability. (*First Options of Chicago, Inc. v. Kaplan, supra*, 514 U.S. at p. 944.) Determining arbitrability is an arbitrable issue. Defendants petitioned to have that issue arbitrated. The denial of that petition should be as appealable as an order denying a petition to arbitrate any other issue. Accordingly, the parties in this case should have the right to seek appellate review of the determination of who decides arbitrability prior to contesting the arbitrability of their substantive disputes in a judicial forum.

Even if the order before us is not appealable, I would treat this appeal as a writ proceeding and resolve it on the merits. "A purported appeal from a nonappealable order may be considered to be a petition for an extraordinary writ if (1) the briefs and record before us contain in substance all the elements prescribed by rule [8.490, former rule 56] of the California Rules of Court for an original mandate proceeding and (2) there are extraordinary circumstances justifying the exercise of that discretionary power." (*Angell v. Superior Court* (1999) 73 Cal.App.4th 691, 698 [86 Cal.Rptr.2d 657].) Both of these requirements are met here. The appeal has been fully briefed and an adequate record provided. Our resolution of this issue would either avoid unnecessary trial court proceedings, or establish confidence that any future proceedings in the trial court will not be annulled by a contrary determination of this threshold issue in a later appeal. The issues of who determines arbitrability and arbitrability are either coextensive or overlap. It makes little

sense, and is contrary to considerations of judicial efficiency, to compel defendants to bring separate writ proceedings in order to obtain appellate review of an issue that has been fully presented to this court.

I would not dismiss the appeal.