[No. B201427. Second Dist., Div. Three. Aug. 18, 2009.]

TERESA MEZA, Plaintiff and Appellant, v.
H. MUEHLSTEIN & CO., INC., et al., Defendants and Respondents.

972

---

**COUNSEL**

Metzger Law Group, Raphael Metzger and Gregory A. Coolidge for Plaintiff and Appellant.

Tropio & Morlan, Scott T. Tropio, Christopher J. Hammond and Jon M. Kasimov for Defendant and Respondent Lucent Polymers, Inc.

Veatch Carlson and Steve R. Segura for Defendant and Respondent Nova Polymers.

Pond North, Frank D. Pond and Sandra L. Gryder for Defendant and Respondent Exchange Plastics Corp.

Poole & Shaffery, John Shaffery and John F. Grannis for Defendant and Respondent Polyone Distribution Company.

Becherer, Kannett & Schweitzer and Shahrad Milanfar for Defendant and Respondent H. Muehlstein & Co., Inc.

## OPINION

**KITCHING, J.**—In personal injury actions involving numerous defendants, separate counsel frequently represent the defendants because their interests are not precisely the same. The defendants, however, often share many common interests, including determining the nature and scope of the plaintiff's injuries and the amount of the plaintiff's damages. Furthermore, the defendants may be able to decrease litigation costs by cooperating and sharing information with each other. Attorneys for the defendants therefore sometimes engage in discussions regarding their respective clients' common interests. The primary issue in this case is whether attorneys waive the attorney work product privilege by engaging in such discussions.

This issue arose when defendant and respondent Lucent Polymers, Inc. (Lucent), moved to disqualify the Metzger Law Group (the Metzger firm) from representing plaintiff and appellant Teresa Meza. Lucent and other joining defendants argued that the Metzger firm should be disqualified because it hired Brett Drouet, an attorney who previously represented one of the defendants and who participated in meetings in which defense counsel disclosed privileged work product.

In opposition to Lucent's motion, Meza argued that defendants' attorneys waived the attorney work product privilege by disclosing their thoughts and impressions about the case to counsel for other defendants. The trial court rejected that argument, found that under the common interest doctrine the defendants did not waive the attorney work product privilege, and granted Lucent's motion.

We affirm. California recognizes the common interest doctrine. Under that doctrine, defendants' attorneys did not waive the attorney work product privilege by communicating with each other regarding their respective clients' common interests. The trial court therefore did not abuse its discretion in its order disqualifying the Metzger firm.

### FACTUAL AND PROCEDURAL BACKGROUND

In August 2001, Meza filed a complaint against Joe's Plastics, Inc. (Joe's Plastics), and numerous other defendants for personal injuries allegedly

resulting from her exposure to toxic chemical products. In October 2002, Meza filed a first amended complaint, wherein she named additional defendants, including Lucent, for a total of 17 named defendants. At least 15 of these defendants retained separate counsel and filed separate answers to Meza's amended complaint. Attorney Drouet of the law firm of Waters, McCluskey & Boehle, represented defendant Joe's Plastics.

Meza alleged that from 1996 to 2000, she worked as a sorter and packager for Aztec Concrete Accessories, Inc., in Fontana, California. She further alleged that as a result of her workplace exposure to hundreds of toxic chemicals negligently "produced, refined, mixed, formulated, developed, researched, tested, inspected, manufactured, labeled, advertised, warranted, marketed, recommended, sold, distributed and delivered" by defendants, she sustained injuries to her internal organs, and became ill with asthma, reactive airways disease, and interstitial pulmonary fibrosis.

In March 2003, Joe's Plastics filed a proposed case management conference (CMC) order and an accompanying declaration by Drouet. Drouet stated in his declaration that defendants' counsel had engaged in two exhaustive and detailed conferences to produce the proposed CMC order. The proposed CMC order stated, in essence, that defense counsel could exchange information regarding their common interests without waiving the attorney-client and attorney work product privileges.[1] With the exception of some minor modifications not relevant here, the trial court adopted the proposed CMC order as an order of the court in April 2003.

In May 2003, defendants entered into a "Joint Defense Cost Sharing Agreement." This agreement, which was signed by Drouet on behalf of Joe's Plastics, provided that the defendants would create a common defense fund to share certain joint defense costs incident to the common defense, including fees for depositions of percipient and expert witnesses, expert preparation, site inspection costs for consultants and experts, compilation of medical records by consultants and experts, medical examinations, data base creation and maintenance by consultants and experts, and costs of deposition transcripts.

---

[1] The proposed order stated, in part: "Having heard the comments and proposals of the parties and determining this matter is complex, . . . [¶] IT IS HEREBY ORDERED: [¶] In order to 1) conserve the resources of the Court and to avoid or minimize unnecessary litigation expense, including costs and attorneys' fees, . . . the Court hereby adopts the following protocol for the maintenance of this action. [¶] . . . [¶] 11. The court recognizes that cooperation among counsel and the parties is essential for the orderly and expeditious resolution of the litigation. The communication, transmission or dissemination of information of common interest among . . . defendants' counsel, or among the parties, shall be protected by attorney-client privilege, the protections afforded by the attorney work product doctrine, the protections afforded to material prepared for litigation or any other privilege to which a party may otherwise be entitled."

Drouet participated with counsel for the other defendants in many meetings and telephone conferences and exchanged numerous e-mails with them. On these occasions, defense counsel shared their thoughts and impressions regarding (1) the plaintiff, including her medical condition, discrepancies in her claims, and her presentation as a witness, (2) the plaintiff's attorneys, anticipating and analyzing their litigation strategies, (3) the plaintiff's percipient and expert witnesses, (4) the joint defense consultants and experts, (5) a site assessment performed at the location where the plaintiff was employed, (6) trial preparation and strategy, and (7) other factual issues and legal strategies. Meza concedes for purposes of this appeal that counsel for defendants, including Drouet, shared their individual work product concerning this litigation.

In January 2004, the trial court entered judgment in favor of defendants and against Meza on the ground that she failed to show any admissible expert evidence establishing causation. Meza timely appealed the judgment to this court (*Meza I*). In July 2004, while the appeal in *Meza I* was pending, Drouet became an associate of the Metzger firm, counsel for Meza.

In October 2004, the trial court entered an order granting a motion to disqualify the Metzger firm. Meza timely appealed that order (*Meza II*). Meza claims, and defendants do not dispute, that Drouet stopped working for the Metzger firm in February 2005.

In December 2005, in an unpublished opinion in *Meza II* (Dec. 6, 2005, B178920) this court reversed the trial court's order disqualifying Meza's counsel, without prejudice, on the ground that the trial court did not have jurisdiction over the matter while *Meza I* was pending. In January 2007, in an unpublished opinion in *Meza I* (Jan. 19, 2007, B174810), this court reversed the judgment against Meza and remanded the case to the trial court for further proceedings.

In June 2007, defendant Lucent filed a motion to disqualify the Metzger firm. Defendants and respondents Nova Polymers, H. Muehlstein & Co., Inc., Polyone Distribution Company, and Exchange Plastics Corp. (joining defendants) joined the motion. Meza claims, and defendants do not dispute, that after Drouet left the Metzger firm, but before Lucent filed its motion to disqualify, Meza dismissed Joe's Plastics from the lawsuit.

In support of her opposition to the motion to disqualify, Meza filed a declaration by Drouet. Drouet stated that he never directly communicated with defendants other than Joe's Plastics, and that counsel for the other defendants never disclosed to him any communications they had with their

clients. Drouet further stated that he did not have any communications with anyone at the Metzger firm regarding this action.

After holding a hearing on the motion to disqualify, the trial court took the matter under submission and conducted an in camera review of certain written communications among defense counsel submitted under seal by Lucent. Thereafter, the trial court granted Lucent's motion to disqualify the Metzger firm. This appeal followed.

## CONTENTIONS

Meza makes three major arguments. First, Meza argues that even if Drouet received privileged information, the trial court erred in disqualifying the entire Metzger firm because Drouet did not share any privileged information with the Metzger firm and because Meza will suffer irreparable harm if the firm is unable to represent her.

Next, Meza contends that Lucent and the joining defendants did not have standing to seek disqualification of the Metzger firm because they did not have an attorney-client relationship with Drouet.

Finally, Meza argues that Lucent failed to establish that the communications among Drouet and other defense counsel were protected under the common interest doctrine. Consequently, Meza claims, Lucent and the other defendants waived their attorney work product privilege with respect to communications with Drouet, and thus the Metzger firm's employment of Drouet was not ground for the firm's disqualification.

## DISCUSSION

### 1. *Standard of review*

"Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion. [Citations.] If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence." (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143 [86 Cal.Rptr.2d 816, 980 P.2d 371] (*SpeeDee*).)

### 2. *The attorney work product doctrine*

The Legislature has codified the attorney work product doctrine in Code of Civil Procedure section 2018.010 et seq.[2] (See *Rico v. Mitsubishi Motors Corp.* (2007) 42 Cal.4th 807, 814 [68 Cal.Rptr.3d 758, 171 P.3d 1092] (*Rico*).) Section 2018.020 provides: "It is the policy of the state to do both of the following: [¶] (a) Preserve the rights of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of those cases. [¶] (b) Prevent attorneys from taking undue advantage of their adversary's industry and efforts."

■ An attorney's work product is the product of the attorney's " 'effort, research, and thought in the preparation of his client's case. It includes the results of his own work, and the work of those employed by him or for him by his client, in investigating both the favorable and unfavorable aspects of the case, the information thus assembled, and the legal theories and plan of strategy developed by the attorney—all as reflected in interviews, statements, memoranda, correspondence, briefs, and any other writings reflecting the attorney's "impressions, conclusions, opinions, or legal research or theories," and in countless other tangible and intangible ways.' " (*BP Alaska Exploration, Inc. v. Superior Court* (1988) 199 Cal.App.3d 1240, 1253–1254, fn. 4 [245 Cal.Rptr. 682], italics omitted (*BP Alaska*); see also *2,022 Ranch v. Superior Court* (2003) 113 Cal.App.4th 1377, 1389–1390 [7 Cal.Rptr.3d 197].)

An attorney has a qualified privilege against the discovery of general work product and an absolute privilege against disclosures of writings containing an attorney's impressions, conclusions, opinions or legal theories. (§ 2018.030; *BP Alaska, supra,* 199 Cal.App.3d at p. 1250.) Although the attorney is the holder of the work product privilege, a client has standing to assert the privilege on behalf of a former attorney who is absent from the litigation. (*BP Alaska*, at p. 1257.) The privilege may also be asserted by a pro se litigant because the privilege "is intended for the protection of litigants, not just attorneys." (*Dowden v. Superior Court* (1999) 73 Cal.App.4th 126, 134 [86 Cal.Rptr.2d 180] (*Dowden*).)

### 3. *Drouet was disqualified from representing Meza*

■ When an attorney successively represents clients with adverse interests, the attorney has a potential conflict of interest. If there is a "substantial

---

[2] Unless otherwise indicated, further undesignated statutory references are to the Code of Civil Procedure.

relationship" between the subjects of the antecedent and current representations, the attorney must be disqualified. (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 283 [36 Cal.Rptr.2d 537, 885 P.2d 950] (*Flatt*).) In other words, if an attorney represents client X, then represents client Y, and X and Y have. adverse interests, the attorney has a conflict of interest and is disqualified from representing Y if his previous representation of X is substantially related to his subsequent representation of Y.

"The 'substantial relationship' test mediates between two interests that are in tension in such a context—the freedom of the subsequent client to counsel of choice, on the one hand, and the interest of the former client in ensuring the permanent confidentiality of matters disclosed to the attorney in the course of the prior representation, on the other. Where the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is *presumed* and disqualification of the attorney's representation of the second client is mandatory . . . ." (*Flatt, supra*, 9 Cal.4th at p. 283.)

Under the substantial relationship test, Drouet was clearly disqualified from representing Meza in this action. There was more than a mere substantial relationship between Meza's suit and Drouet's representation of Joe's Plastics. Drouet represented Joe's Plastics in the very same suit Meza was pursuing. This was a per se conflict of interest that disqualified Drouet from representing Meza in this case. (See Rules Prof. Conduct, rule 3-310(C)(2).)

### 4. *The trial court did not abuse its discretion in disqualifying the entire Metzger firm*

Meza argues that even if Drouet were disqualified from representing her, the entire Metzger firm was not. Meza claims that Drouet did not have communications with anyone at the Metzger firm regarding this case and that the law firm employed extensive screening procedures to prevent Drouet from disclosing confidential information.

■ "As a general rule in California, where an attorney is disqualified from representation, the entire law firm is vicariously disqualified as well. [Citations.] This is especially true where the attorney's disqualification is due to his prior representation of the opposing side during the same lawsuit." (*Henriksen v. Great American Savings & Loan* (1992) 11 Cal.App.4th 109, 114–115 [14 Cal.Rptr.2d 184], fn. omitted (*Henriksen*); see also *Flatt, supra,·*

9 Cal.4th at p. 283.) Accordingly, an "ethical wall" between an attorney with confidential information and his or her firm will generally not preclude the disqualification of the firm. (*Henriksen*, at p. 115.) Instead, there is a presumption that each member of the firm has imputed knowledge of the confidential information. (*SpeeDee, supra*, 20 Cal.4th at p. 1146; *Flatt*, at p. 283.)

Arguably the risk of Drouet disclosing confidential information to the Metzger firm substantially diminished when Drouet left the firm. We are also mindful that Meza's interest in selecting her own counsel should be given due consideration. The trial court, however, acted well within its discretion in disqualifying the Metzger firm.

Prior to joining the Metzger firm, Drouet engaged in numerous oral and written communications with counsel for Lucent and the joining defendants, wherein defense counsel revealed substantial confidential and privileged attorney work product. This work product included defense counsel's impressions, conclusions and opinions about critical issues in the case. For good practical reasons, including saving judicial resources, the trial court expressly ordered that defense counsel could share work product regarding issues of common interest without waiving the work product privilege.[3] The Metzger firm knew of this order before it hired Drouet but chose to hire Drouet anyway. The trial court could have reasonably concluded that allowing the Metzger firm to represent Meza would undermine California's policy in favor of protecting attorney work product, its own CMC order, and the integrity and fairness of the proceedings.

We are not persuaded by Meza's argument that the disqualification of the Metzger firm will cause her "irreparable harm." Meza has presented no evidence to support her claim that Metzger is "the only firm in the State of California that regularly litigates non-asbestos interstitial lung disease and asthma cases." In any case, the trial court could reasonably find that defendants' interest in protecting attorney work product outweighed Meza's interest in choosing her counsel.

Meza compares Drouet's seven-month tenure at the Metzger firm with the "brief and insubstantial" contact between a lawyer and an opposing party in *In re Marriage of Zimmerman* (1993) 16 Cal.App.4th 556, 565 [20 Cal.Rptr.2d 132] (*Zimmerman*) [trial court did not abuse its discretion in denying former wife's motion to disqualify her former husband's attorney].) This comparison

---

[3] As discussed below, this order was consistent with the common interest doctrine.

is unpersuasive for at least two reasons. The first is that Meza is comparing apples with oranges. Meza is comparing the relationship between a lawyer (Drouet) and his new firm (Metzger) in this case with the relationship between a party and an attorney at the opposing party's law firm in *Zimmerman*. Second, the attorney-client relationship in *Zimmerman* consisted of a 20-minute telephone conversation prior to the commencement of litigation. Drouet's representation of Joe's Plastics and his relationship with the Metzger firm were far more substantial. *Zimmerman* therefore does not support Meza's position.

Meza's reliance on *Adams v. Aerojet-General Corp.* (2001) 86 Cal.App.4th 1324 [104 Cal.Rptr.2d 116], is equally misplaced. In *Adams*, an attorney's previous law firm advised a manufacturer about the disposal of toxic waste at a particular site. The attorney, Hackard, did not personally advise the manufacturer about that issue or any other issue. Nine years after leaving the firm, Hackard represented plaintiffs against the same manufacturer in a case arising from its alleged wrongful disposal of toxic waste at the site. The court held that the "imputed knowledge doctrine," that is, the doctrine that a lawyer's knowledge of confidential information is imputed to other attorneys in his or her firm, does not work in reverse. In other words, the firm's knowledge could not be imputed to Hackard so that he was automatically disqualified from representing plaintiffs suing the manufacturer even after he left the firm. (*Id.* at p. 1333.)

In this case, by contrast, while Drouet was employed by the law firm of Waters, McCluskey & Boehle, Drouet was actively involved in the representation of defendant Joe's Plastics. Thus the trial court did not impute the knowledge of Waters, McCluskey & Boehle to Drouet; Drouet had *personal knowledge* of confidential work product disclosed by counsel for Lucent and the joining defendants. The facts of *Adams* therefore are distinguishable from the facts of this case.

### 5. Lucent and the joining defendants had standing to seek the Metzger firm's disqualification

■ Meza argues that Lucent and the joining defendants did not have standing to challenge the Metzger firm's representation of Meza because they did not have an attorney-client relationship with Drouet and thus cannot invoke the attorney-client privilege. We disagree. Protection of the attorney-client privilege is not the *only* ground for a motion to disqualify an attorney. An attorney may be disqualified for a variety of reasons, including the protection of confidential work product of opposing counsel. (See *Rico, supra*, 42 Cal.4th at p. 819.) Here Lucent, along with the joining defendants and their respective counsel, clearly had an interest in protecting confidential

attorney work product disclosed to Drouet during the time he participated in joint defense efforts. (See *DCH Health Services Corp. v. Waite* (2002) 95 Cal.App.4th 829, 832–833 [115 Cal.Rptr.2d 847] [attorney-client relationship not always required for a party to have standing to bring a motion to disqualify counsel].)

> 6. *California recognizes the common interest doctrine. Under that doctrine, Lucent and the joining defendants did not waive protection of confidential attorney work product*

The protection offered by the attorney work product privilege[4] can be waived if work product is disclosed to third parties. (*OXY Resources California LLC v. Superior Court* (2004) 115 Cal.App.4th 874, 891 [9 Cal.Rptr.3d 621] (*OXY*).) However, "work product protection 'is not waived except by a disclosure wholly inconsistent with the purpose of the privilege, which is to safeguard the attorney's work product and trial preparation.' " (*Ibid.*)

Under the common interest doctrine, an attorney can disclose work product to an attorney representing a separate client without waiving the attorney work product privilege if (1) the disclosure relates to a common interest of the attorneys' respective clients; (2) the disclosing attorney has a reasonable expectation that the other attorney will preserve confidentiality; and (3) the disclosure is reasonably necessary for the accomplishment of the purpose for which the disclosing attorney was consulted. (See *OXY, supra,* 115 Cal.App.4th at p. 891.)

The common interest doctrine does not create a new privilege or extend an existing one. "Rather, the common interest doctrine is more appropriately characterized under California law as a nonwaiver doctrine, analyzed under standard waiver principles applicable to the attorney-client privilege and the work product doctrine." (*OXY, supra,* 115 Cal.App.4th at p. 889.)

Meza does not dispute that California recognizes the common interest doctrine. She instead argues that under the facts of this case, the common interest doctrine does not apply.

Meza contends that because defendants had separate, dissimilar, and at times adverse interests, defendants' attorneys could not disclose work product

---

[4] In published opinions, the California courts have referred to attorney work product protection as a "doctrine" (e.g., *Rico, supra,* 42 Cal.4th at p. 814) and as a "privilege." (E.g., *Dowden, supra,* 73 Cal.App.4th at p. 133.) Section 2018.080 refers to the "work product privilege." Whether attorney work product is protected under a "doctrine" or a "privilege," it is clearly protected by statute.

to each other without waiving the attorney work product privilege. This is incorrect. It is true that a defendant's attorney's disclosure of work product relating to the defendants' *adverse* interests results in a waiver of the attorney work product privilege. However, the disclosure of work product relating to the defendants' *common* interests does not result in a waiver so long as the second and third elements of the common interest doctrine are satisfied.

In this case, while all defendants had different and potentially adverse interests, they also indisputably had common interests. All defendants, for example, had common interests in Meza's medical condition, alleged discrepancies in her claims, and her presentation as a witness. Likewise, all defendants had common interests in anticipating and analyzing Meza's litigation strategies and in retaining joint defense consultants and experts. Furthermore, it is undisputed that defendants' attorneys disclosed work product to each other relating to the defendants' common interests.[5] Accordingly, the first element of the common interest doctrine is satisfied with respect to all such disclosures.

Meza contends that defendants failed to submit any evidence establishing the second element of the common interest doctrine—defense counsel's reasonable expectation of confidentiality. We reject this argument because the trial court's CMC order expressly authorized defendants' attorneys to disclose to each other attorney work product relating to issues of common interest without fear of waiver. In light of the CMC order, defendants' attorneys reasonably expected that counsel for codefendants would preserve the confidentiality of attorney work product disclosed in communications regarding common interests. The second element of the common interest doctrine is thus satisfied.

With respect to the third element, Meza argues that although the sharing of work product among defense counsel may have made the litigation more efficient, it was not reasonably necessary. Meza is again incorrect.

■ Substantial evidence supports the trial court's finding that communications among defense counsel were "reasonably necessary" for the accomplishment of the purpose for which defense counsel were retained. It is clear from the declarations submitted by defendants that defense counsel shared their confidential ideas about the case with each other in order to better

---

[5] The trial court found that "[t]he evidence . . . establishes that the defendants had a shared interest and that the communications among counsel, which were made in furtherance of that interest, are in fact confidential." We conclude that there is substantial evidence to support this finding.

prepare for trial.[6] Accordingly, under the common interest doctrine, the attorney work product privilege was not waived.

◾ In her reply brief, Meza argues that Lucent and the joining defendants are judicially estopped from arguing that they had common interests in the litigation because they previously argued that their interests in this action were too dissimilar to require them to participate in certain joint discovery. Meza did not make this argument to the trial court or in her opening brief. The argument thus has been doubly waived. (*Heiner v. Kmart Corp.* (2000) 84 Cal.App.4th 335, 351 [100 Cal.Rptr.2d 854].) In any case, Meza's argument is without merit. An essential element of judicial estoppel is that a party is taking two "totally inconsistent" positions. (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183 [70 Cal.Rptr.2d 96].) Lucent's position that the defendants have some significantly different interests requiring separate written discovery is not totally inconsistent with Lucent's position that the defendants have many common interests making it reasonably necessary for them to cooperate in a joint defense effort.

Meza speculates that if the trial court had reviewed in camera *all* communications among defense counsel, not only the "hand-picked" e-mails selected by Lucent, it might have found that defendants waived the attorney work product privilege. Meza contends that *OXY* required such a review. We disagree.

In *OXY*, a party moved to compel the production of nearly 200 documents withheld by the opposing party on the grounds that the documents were protected by the attorney-client privilege and attorney work product doctrine as well as a joint defense agreement. The Court of Appeal held that the trial court was required to review all of the documents in camera, even though the review might be burdensome. (*OXY, supra,* 115 Cal.App.4th at pp. 896–897.)

The present case has a very different procedural posture than *OXY*. The trial court only needed to determine whether Drouet was privy to *some* confidential attorney work product that was reasonably shared among defense counsel in furtherance of common interests. The issue of whether each and every written communication among defense counsel was privileged was not before the trial court. The trial court thus was not required to engage in the burdensome and unnecessary process of reviewing *all* written communications among defense counsel.

---

[6] We conclude that there was substantial evidence to support the trial court's findings relating to the common interest doctrine based on the record on appeal submitted by Meza. In addition, we obtained and reviewed the sealed documents reviewed in camera by the trial court. (See Cal. Rules of Court, rule 8.160(c)(3).) Our review of the sealed records confirms that Drouet received confidential attorney work product shared by defense counsel in furtherance of defendants' common interests, and that the sharing of such information was reasonably necessary.

## DISPOSITION

The order granting Lucent's motion to disqualify the Metzger from representing Meza is affirmed. Costs are awarded to respondents.

Croskey, Acting P. J., and Aldrich, J., concurred.