Filed 10/25/18 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| UBER TECHNOLOGIES, INC.<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GOOGLE LLC,<br><br>    Defendant and Appellant. | A153653<br><br>(City & County of San Francisco<br>Super. Ct. No. CPF-17-515960)<br><br>**ORDER MODIFYING OPINION;<br>NO CHANGE IN JUDGMENT** |

BY THE COURT:

It is ordered that the opinion filed herein on September 28, 2018, be modified as follows:

On page 15, in the paragraph commencing with the words "Next, Uber claims," the three consecutive sentences beginning with "The record shows" and ending with "scope of the indemnified claims" are deleted. The following sentence is inserted in its place: "The record shows Diligenced Employees were required to cooperate and make their devices available to Stroz as a pre-condition to the execution of the Put Call Agreement and as a means to determine the scope of the indemnified claims."

The petition for rehearing filed October 15, 2018, is denied. There is no change in the judgment.

Date: October 25, 2018                           \_\_\_\_SIGGINS, P.J._____P.J.

Trial Court:                                    City & County of San Francisco Superior Court

Trial Judge:                                    Honorable Harold E. Kahn

Counsel:

Keker, Van Nest & Peters, Robert A. Van Nest, Dan Jackson, Jo W. Golub, W. Hamilton Jordan, Rachel E. Meny, Thomas E. Gorman for Defendant and Appellant.

Boies Schiller Flexner, Meredith R. Dearborn, Juan P. Valdivieso, Hamish Hume, Jessica Phillips for Plaintiff and Respondent.

Goodwin Procter, Andrew S. Ong for Real Party in Interest, Andrew Levandowski.

Taylor & Patchen, Karen S. Dhadialla for Real Party in Interest, Lior Ron.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| UBER TECHNOLOGIES, INC.,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>GOOGLE LLC,<br><br>　　　　Defendant and Appellant. | A153653<br><br>(**REDACTED**) |

Anthony Levandowski and Lior Ron are former Google LLC (Google) employees who started the self-driving vehicle company Ottomotto LLC (Otto).  Google considered Otto a competitor to its own self-driving vehicle project.  After Otto was acquired by Uber Technologies, Inc. (Uber), Google initiated arbitration proceedings against its two former employees for allegedly breaching their employment contracts, breaching their fiduciary duties, fraud, tortious interference with Google's employment relationships, and other claims.  Google sought discovery from Uber, a nonparty to the arbitration, related to pre-acquisition due diligence done at the request of Uber and Otto's outside counsel by Stroz Friedberg LLC.  Over Uber's objections, the arbitration panel determined the due diligence documents were not protected by either the attorney client privilege or the attorney work product doctrine and ordered them produced.  Uber initiated a special proceeding in superior court seeking to vacate the arbitration panel's discovery order and prevailed.

Google now appeals from the superior court's order.  We deny Uber's motion to dismiss the appeal because the superior court's order determined all the pending issues in the special proceeding between Google and Uber and was thus a final appealable order.  Further, the due diligence-related documents prepared by Stroz were not protected

attorney-client communications. Neither were they entitled to absolute protection from disclosure under the attorney work product doctrine. Although the materials had qualified protection as work product, denial of the materials would unfairly prejudice Google's preparation of its claims. The superior court order is reversed.

## BACKGROUND

Levandowski and Ron started working at Google in 2007. Both resigned from Google in January 2016. After leaving, they formed Otto, a self-driving technology company which Google considered a competitor of its own self-driving car project. In August 2016, Otto was acquired by Uber. In October 2016, Google initiated arbitration proceedings against Levandowski and Ron for allegedly breaching non-solicitation and non-competition agreements. The arbitration between Google and Levandownski and Ron was scheduled to commence on April 30, 2018.

## DISCUSSION

### I. Appealability of Superior Court's Discovery Order

In July 2017, Google issued a third-party subpoena in the arbitration proceedings, demanding that Uber produce documents related to pre-acquisition due diligence conducted by the investigative firm Stroz Friedberg LLC (Stroz). Google sought all documents related to Stroz's investigation into Levandowski, Ron, and Otto, including a report Stroz prepared at the request of counsel. Uber objected and refused to produce the documents, asserting they were protected under the attorney-client privilege and as attorney work product.

In September 2017, Google moved in the arbitration to compel production of the Stroz documents. The arbitration panel chair found these Stroz-related materials ("Stroz Materials") were not privileged or attorney work product. Uber appealed to the full arbitration panel which summarily affirmed the chair's order.

Uber petitioned the San Francisco Superior Court to vacate the panel's discovery order. The superior court granted Uber's petition and vacated the arbitration panel's decision, requiring Uber to produce the documents (the "Order" or "Discovery Order").

2

On January 22, 2018, Google filed this appeal, asserting the Order was a final appealable "order vacating an [arbitration] award." Days later, in an effort "to accelerate adjudication of the issues raised by Google's appeal," Google petitioned for a writ of mandate, prohibition, and/or other appropriate relief (Case No. A153457), asking this Court to direct the superior court to vacate the Order. This court summarily denied the writ.

In February 2018, Uber moved to dismiss this appeal on the ground that we lack jurisdiction. Following oral argument on Uber's motion, we deferred a decision on the motion to dismiss until we considered the appeal on its merits.[1]

Uber contends this court lacks jurisdiction over Google's appeal because the trial court's Discovery Order was not a final arbitration award and thus not appealable. Google argues the Order was final, conclusive, and appealable as "[a]n order vacating an award" under Code of Civil Procedure section 1294, subdivision (c).[2]

Section 1294 governs the right to appeal from trial court orders in arbitration matters. It provides that " '[a]n aggrieved party may appeal from: [¶] (a) An order dismissing or denying a petition to compel arbitration. [¶] (b) An order dismissing a petition to confirm, correct or vacate an award. [¶] (c) An order vacating an award unless a rehearing in arbitration is ordered. [¶] (d) A judgment entered pursuant to this title. [¶] (e) A special order after final judgment.' " (*Vivid Video, Inc. v. Playboy Entertainment Group, Inc.* (2007) 147 Cal.App.4th 434, 442 (*Vivid Video*).)

" ' "[N]o appeal can be taken except from an appealable order or judgment, as defined in the statutes and developed by the case law." ' [Citation.]" (*City of Gardena v. Rikuo Corp.* (2011) 192 Cal.App.4th 595, 601.) "The existence of an appealable order or judgment is a jurisdictional prerequisite to an appeal." (*Canandaigua Wine Co., Inc. v. County of Madera* (2009) 177 Cal.App.4th 298, 302 (*Canandaigua*).)

---

[1] We ordered Google's writ petition in A153457 be deemed the opening brief in this appeal and that the record in A153457 serve as the record in this case.

[2] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

"[Code of Civil Procedure] Section 904.1, subdivision (a), governs the right to appeal in civil actions. It codifies the 'one final judgment rule,' which provides that ' " 'an appeal may be taken only from the final judgment in an entire action.' " [Citation.]' [Citation.] A judgment is final, and therefore appealable, when it embodies 'the final determination of the rights of the parties in an action or proceeding' (§ 577). A judgment constitutes the final determination of the parties' rights ' "where no issue is left for future consideration except the fact of compliance or noncompliance with [its] terms . . . ." [Citation.]' [Citation.]" (*Kaiser Foundation Health Plan, Inc. v. Superior Court* (2017) 13 Cal.App.5th 1125, 1138 (*Kaiser Foundation*).) "The one final judgment rule is a 'fundamental principle of appellate practice that prohibits review of intermediate rulings by appeal until final resolution of the case.' [Citation.] '[A]n appeal cannot be taken from a judgment that fails to complete the disposition of all causes of action between the parties. . . .' " (*C3 Entertainment, Inc. v. Arthur J. Gallagher & Co.* (2005) 125 Cal.App.4th 1022, 1025.) " '[E]xceptions to the one final judgment rule should not be allowed unless clearly mandated.' " (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 757.) "[I]f the order or judgment is not appealable, the appeal must be dismissed." (*Canandaigua*, *supra*, 177 Cal.App.4th at p. 302.)

We know of no case that addresses the precise issue before us, namely, whether a party to an arbitration has a right to appeal an adverse superior court order vacating an arbitrator's discovery order in favor of a third party to the arbitration.

Our Supreme Court's decision in *Berglund v. Arthroscopic & Laser Surgery Center of San Diego, L.P.* (2008) 44 Cal.4th 528 (*Berglund*) provided the superior court jurisdiction to consider Uber's petition to vacate the discovery order in the underlying arbitration. There, a nonparty to an arbitration proceeding was ordered by the arbitrator to produce documents. (*Id*. at p. 533.) The nonparty moved for a protective order in the superior court, which the superior court denied because it believed it lacked jurisdiction to review an arbitrator's discovery order. (*Ibid*.) The nonparty appealed. (*Ibid*.) The Supreme Court acknowledged that discovery disputes between parties to an arbitration agreement are " 'generally immune from judicial review.' " (*Id*. at p. 534.) The Court

4

explained that parties to an arbitration agreement knowingly accept the limited judicial review of an arbitrator's decisions and the risk that an arbitrator might make a mistake. (*Ibid*.) However, nonparties, who did not consent to any arbitration agreement, "cannot be compelled to arbitrate a dispute." (*Id*. at p. 536.) Absent such consent, the Court concluded that nonparties were entitled to full judicial review of any adverse discovery order issued by the arbitrator against them. (*Id*. at pp. 537-538.) This result was necessary to preserve the legal rights of nonparties who never agreed to the arbitration in the first place. (*Id*. at p. 538.) While *Berglund* established that a nonparty dissatisfied with an arbitrator's discovery decision may seek full judicial review in the superior court, it did not determine whether a party to the arbitration dissatisfied with the superior court decision then has a right of direct appeal.

On this issue unaddressed by *Berglund*, we conclude such a right of direct appeal exists based on the one final judgment rule. Here, the Discovery Order was the final resolution of the special proceeding initiated by Uber for the sole purpose of vacating the arbitration panel's order compelling Uber to produce the Stroz Materials. The superior court's order resolved the dispute between Uber and Google with finality. In vacating the arbitration panel's award, the court's order relieved Uber of any obligation to produce the Stroz Materials in the underlying arbitration and conclusively determined Uber's obligations to Google. There was nothing left for the superior court to determine as between Uber and Google, and the Order disposed of all issues between them in the special proceeding. Since the Order was "the final determination of the rights of the parties" (§ 577), it is appealable.

The Discovery Order also had the finality required under section 1294. "Under section 1294, appealable arbitration orders require finality. . . . '[T]he Legislature's philosophy and intent in drafting section 1294 was that there should be no appellate consideration of intermediate rulings in arbitration disputes if the superior court was of the view that there should be initial or further proceedings in arbitration. . . .' An intermediate ruling in an arbitration dispute that contemplates further proceedings *in arbitration* is not appealable. [Citations.] Requiring finality in appealable arbitration

5

orders is consistent both with the language of section 1294 and the general prohibition of appeals from interlocutory nonfinal judgments in section 904.1, subdivision (a). [Citations.]" (*Vivid Video*, *supra*, 147 Cal.App.4th at pp. 442–443.) The Discovery Order contemplated no further proceedings between Google and Uber. It completely resolved the parties' dispute as Uber was not a party to the arbitration.

Finally, even though the case did not arise out of an arbitration proceeding, *City of Woodlake v. Tulare County Grand Jury* (2011) 197 Cal.App.4th 1293 (*Woodlake*), underscores our conclusion. There, the appellant sought review of an order denying enforcement of an investigative subpoena "in which enforcement or nonenforcement was the only issue before the superior court." (*Id.* at p. 1299.) The court noted that " '[g]enerally, discovery orders are not appealable' " but found that " 'generalization is inapplicable' " when " 'the order is ancillary to litigation in another jurisdiction and operates as the last word by a California trial court on the matters at issue.' " (*Ibid.*) The *Woodlake* court observed that the respondent did not contend that its petition remained pending. (*Ibid.*) Nor did the respondent contend "further proceedings are contemplated in the trial court, the traditional criterion for finality of an order." (*Ibid.*) The court concluded that the trial court's order terminated the entire proceeding on the merits and was appealable as a final judgment. (*Ibid.*) Such is the case here.

Uber contends the Discovery Order is not a final award because it "did not dispose of any of the claims to be tried in the arbitration." According to Uber, "[t]he only thing the Order did is protect Uber . . . from having to produce privileged and work-product protected material from discovery in the Arbitration." Uber is correct that the trial court's Order decided only a preliminary discovery dispute in the arbitration. However, Uber was not a party to the arbitration, and the Order determined the entire controversy between Uber and Google in the special proceeding. As Uber itself cites, the "one final judgment rule" requires that a judgment is appealable when it embodies *the final determination of the rights of the parties in an action or proceeding*." (§ 577, italics added.)

6

At oral argument on the motion to dismiss, Uber argued the Order lacked finality for other reasons. Uber explained that after a final award on the merits in the underlying arbitration, Google would be able to petition the superior court to confirm, vacate, or modify the award, and could appeal that result if so inclined. Uber emphasized the Discovery Order eventually could be reviewed in such a direct appeal by Google. We do not dispute Google's ability to appeal from a judgment confirming an adverse arbitration award. However, Google's right to eventually appeal an adverse judgment from its arbitration with Levandowski and Ron does not render the Discovery Order intermediate or incomplete in the dispute between Uber and Google. Nor does it deprive Google of its ability to appeal a final judgment in a fully adjudicated special proceeding.

The two principle cases Uber relies upon do not compel a different result. In *Judge v. Nijjar Realty, Inc.* (2014) 232 Cal.App.4th 619 (*Judge*), the arbitrator issued a "partial final award" which concluded that an agreement permitted arbitration of the plaintiff's class action claims. (*Id.* at p. 627.) The defendants petitioned the trial court to vacate the arbitrator's award. (*Ibid.*) The trial court did so, ruling the arbitrator exceeded her powers by deciding the arbitrability of the class claims, and the plaintiff appealed. (*Id.* at pp. 627-628.) The appellate court recognized an order vacating an award in the absence of a rehearing was appealable under section 1294, subdivision (c), but determined the trial court's order did not vacate an "award" within the meaning of the statute. (*Id.* at pp. 633-634.) The *Judge* court explained that "an arbitration award must 'include a determination of all the questions submitted to the arbitrators the decision of which is necessary to determine the controversy.'" (*Id.* at p. 633.) The order contested in *Judge* did not resolve the arbitration but decided only, as a threshold matter, that class claims were subject to arbitration. (*Id.* at p. 638.) *Judge* held the order vacating the class arbitrability determination was not an appealable final award and dismissed the appeal. (*Id.* at pp. 632, 638.)

In *Kaiser Foundation*, *supra*, 13 Cal.App.5th.1125, Kaiser moved an arbitration panel to dismiss claims brought by several hospitals for Kaiser's alleged failure to reimburse them for medical services provided to its members. (*Id.* at p. 1130.) The

7

arbitration panel denied the motion, and Kaiser petitioned the trial court to vacate the award. (*Ibid.*) After the trial court denied the petition and entered judgment confirming the award, Kaiser appealed. (*Ibid.*) However, the appellate court determined the award was not appealable. (*Id.* at pp. 1144, 1146.) Citing to *Judge*, the *Kaiser Foundation* court explained that the partial final award "did not 'determin[e] . . . all the questions submitted to the arbitrators the decision of which is necessary to determine the controversy' [citation]." (*Id.* at pp. 1143-1144.) The court noted that "[t]he controversy between Kaiser and [the hospitals] encompasse[d] a wide range of questions" but the partial final award determined "the sole question" of whether the plaintiffs' claims were preempted and subject to certain exhaustion requirements. (*Id.* at p. 1144.) According to the court, "[t]he partial final award did not resolve all of the other questions necessary to determine the parties' controversy" which had yet to be ruled upon and were pending before the arbitration panel. (*Ibid.*)

Both cases are distinguishable. First of all, the orders appealed in both *Judge* and *Kaiser* involved disputes between the parties to the underlying arbitration agreement. In both cases, additional controversies between the parties remained, and the parties would continue to resolve those in arbitration. In contrast, this case involved a nonparty to the underlying arbitration, and the single dispute involving the nonparty was conclusively determined by the superior court. *Judge* and *Kaiser Foundation* do not apply.

Because the Discovery Order is a final determination of the discovery rights between Uber and Google in the special proceeding commenced for the sole purpose of resolving this discovery dispute, the order is appealable. Uber's motion to dismiss is denied, and we proceed to consider the merits of the appeal.

*II. The Stroz Materials*

On February 22, 2016, Uber and Otto signed a term sheet for Uber's acquisition of Otto.[3] The term sheet established a process for Uber to potentially acquire 100%

___

[3] Many of the documents pertaining to that agreement have been filed under seal, but some of the details in the agreements are otherwise already in the public record. At oral argument, the court requested the parties to identify the specific factual material in

8

ownership of Otto through the execution of a Put Call Agreement. An "Indemnity Construct" agreement was part of the term sheet and provided that Uber would indemnify Levandowski and Ron from certain claims Google might assert against them post-acquisition. These included claims for the infringement or misappropriation of any intellectual property; breach of fiduciary duty to their former employer; and breach of any non-solicitation, non-competition, or confidentiality agreement.

To determine the scope of the indemnified claims, the Indemnity Construct contained a "Pre-Signing Due Diligence Process." An "Outside Expert" was to investigate certain Otto "Diligenced Employees," including Levandowski and Ron. The Outside Expert was to prepare a "third party report," which the term sheet defined as "the written report(s) . . . summarizing in detail all of the facts, circumstances, activities or events obtained by the Outside Expert from any Diligenced Employee that the Outside Expert deems are reasonably related to any Bad Act of such Diligenced Employee, in each case, based on the interviews, forensic due diligence and other due diligence investigation with respect to all Diligenced Employees conducted by the Outside Expert." "Bad Acts" covered any infringement or misappropriation of trade secrets, breach of fiduciary duty, and violation of any non-solicitation, non-competition, or confidentiality agreement committed by an employee.

Stroz, an independent third party and digital forensic expert, was the Outside Expert tasked with performing the pre-signing due diligence and was to be "jointly directed by and engaged by" Uber and Otto. Stroz was jointly retained in an engagement letter dated March 4, 2016, by Uber's outside counsel at Morrison Foerster (MoFo) and Otto's outside counsel at O'Melveny & Myers (O'Melveny). Their engagement letter with Stroz states: "The purpose of the investigation is to ascertain facts that, in the opinion of [MoFo and O'Melveny], bear on issues of whether certain current or

the record each party believes must remain sealed. Based on the parties' responses to that request and in light of the facts and documents that are otherwise already known to be in the public record, we have redacted portions of this opinion where necessary to protect information under seal not already in the public domain.

9

prospective employees . . . of Ottomotto have improperly retained on devices or in storage repositories not belonging to former employers, confidential information belonging to former employers, and whether such current or prospective employees breached any fiduciary duty, duty of loyalty, or other confidentiality, non-solicitation, non-competition or other obligations based in contract, statute or otherwise."

During the pre-acquisition due diligence, Levandowski was represented by Donahue Fitzgerald LLP's John Gardner. Ron was personally represented by Levine & Baker, LLP. Neither retained Stroz on behalf of their clients.

In and around March 2016, Stroz began its investigation under MoFo's and O'Melveny's supervision and direction. Stroz collected from Levandowski and Ron various electronic devices and access to various cloud-based storage accounts. In addition, Stroz interviewed Levandowski and Ron.

Sometime in April 2016, Stroz gave Uber's counsel at MoFo an oral report on its preliminary fact finding and memos of interviews with Levandowski and Ron.

On April 11, 2016, Uber and Otto executed the Put Call Agreement and finalized the indemnification agreement.

That same day, Otto, Levandowski, Ron, and Uber through their respective counsel executed a "Joint Defense, Common Interest, and Confidentiality Agreement" "in contemplation of potential investigations, litigation, and/or other proceedings" related to Uber's acquisition of Otto. Uber claims that the parties had an oral joint defense and common interest agreement as of February 24, 2016.

On August 5, 2016, Stroz issued its final, written report to Uber's MoFo attorneys and Otto's O'Melveny attorneys. That report is labeled "Privileged & Confidential [¶] Attorney Work Product."

On February 23, 2017, with Google's arbitration pending against Levandowski and Ron for the alleged breach of their employment contracts, Google filed a related civil action, *Waymo LLC v. Uber Technologies, Inc.*, Case No 3:17-cv-00939-WHA in the United States District Court for the Northern District of California (the "Federal Case"). In this Federal Case, Waymo, the Google-related self-driving car company, sought

10

damages and injunctive relief against Uber based on alleged trade secret misappropriation arising out of Uber's acquisition of Otto.

Waymo moved to compel production of the Stroz report and its exhibits. In June 2017, the magistrate judge granted Waymo's motion. The magistrate held the Stroz documents were not protected by Levandowski's attorney-client privilege because the "record is clear that Uber and Otto alone engaged Stroz to conduct the due diligence required by the Term Sheet." Nor were the documents protected by Uber's attorney client privilege because Stroz interviewed Levandowski and Ron in their individual capacities, not as Otto executives. The magistrate also found the Stroz report was not protected attorney work product, and not protected under the common interest doctrine. Over the objections of Uber, Otto, and Levandowski, the district court affirmed the magistrate's order. Levandowski unsuccessfully sought mandamus relief in the Federal Circuit. (See *Waymo LLC v. Uber Techs., Inc.* (Fed. Cir. Sept. 13, 2007) 870 F.3d 1350.) In October 2017, Uber released the Stroz report.

As the Federal Case proceeded, the arbitration between Google and Levandowski and Ron moved forward. Like Waymo did in the Federal Case, Google sought and moved to compel production of the Stroz-related documents in the arbitration. The arbitration panel chair found these Stroz Materials were protected by neither the attorney-client privilege nor attorney work product doctrine. Uber appealed to the full arbitration panel which summarily affirmed the chair.

Then, Uber successfully petitioned the San Francisco Superior Court to vacate the panel's order. The superior court held the Stroz Materials were protected under the attorney client privilege, and it was not waived when the documents were shared between Uber, Otto, Levandowski, Ron, and their respective attorneys. The superior court granted Uber's petition and vacated the arbitration panel's decision compelling Uber to produce the documents.

On January 22, 2018, Google appealed from the Order. We now address it on the merits.

A. Applicable Standards of Review

11

The parties disagree on the standard of review we must apply on appeal and the standard the superior court should have applied in reviewing the arbitration panel's order.

Google relies on *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal. 4th 362 (*Advanced*) to contend we must review the superior court's order de novo. Uber argues *Advanced* says nothing about our standard of review of a court's order vacating an arbitrator's order compelling discovery from a nonparty. It views this case as analogous to a petition for review of an interlocutory order, citing *Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733 (*Costco*), and submits our review should be for abuse of discretion.

De novo review is proper here. As we have discussed above, this is a final order that conclusively resolved the dispute between Uber and Google. Thus, we decline to employ a review standard more appropriately applied to interlocutory orders, as Uber urges. Appellate courts review superior court orders vacating a final arbitration award de novo. (See *Malek v. Blue Cross of California* (2004) 121 Cal.App.4th 44, 55-56 (*Malek*); *Reed v. Mutual Service Corp.* (2003) 106 Cal.App.4th 1359, 1364-1365.) We see no reason to use a different standard. In addition, to the extent that the superior court's ruling rests upon a determination of disputed factual issues, we review them for substantial evidence. (*Malek*, *supra*, 121 Cal.App.4th at pp. 55-56; *Reed*, *supra*, 1106 Cal.App.4th at p. 1365.)

When it comes to the standard of review applied by the superior court to the arbitration panel's order, the parties not unexpectedly flip positions. Google contends the superior court erroneously applied the de novo standard and disregarded the arbitration panel's findings of fact. Google asserts the superior court should have applied the deferential abuse of discretion standard. Uber argues the superior court properly applied the de novo standard. We do not reach this issue because under either standard the superior court erred in vacating the arbitration panel's decision.

## B. Attorney-Client Privilege

Under California law, an attorney-client communication is one "between a client and his or her lawyer in the course of that relationship and in confidence." (Evid. Code,

§ 952.)  An attorney-client relationship exists when the parties satisfy the definitions of "lawyer" and "client" as specified in Evidence Code sections 950 and 951, respectively.  For purposes of the attorney-client privilege, "client" is defined in relevant part as "a person who, directly or through an authorized representative, consults a lawyer for the purpose of retaining the lawyer or securing legal *service or advice* from him in his professional capacity . . . ."  (Evid. Code, § 951, italics added.)  "Confidential communication" protected by the privilege refers to "information transmitted between a client and his or her lawyer in the course of that relationship and in confidence" by confidential means.  (Evid. Code, § 952.)  A confidential communication may include "a legal opinion formed and the advice given by the lawyer in the course of that relationship."  (*City of Petaluma v. Superior Court* (2016) 248 Cal.App.4th 1023, 1032.)

The attorney client privilege may also extend to third parties who have been engaged to assist the attorney in providing legal advice.  (See *State Farm Fire & Casualty Co. v. Superior Court* (1997) 54 Cal.App.4th 625, 639 (*State Farm*) [" 'It is no less the client's communication to the attorney when it is given by the client to an agent for transmission to the attorney, and it is immaterial whether the agent is the agent of the attorney, the client, or both.' "].)

In assessing whether a communication is confidential and thus privileged, the initial focus of the inquiry is on the "dominant purpose of the relationship" between attorney and client and not on the purpose served by the particular communication.  (*Costco, supra,* 47 Cal.4th at pp. 739-740, italics omitted.)  "If the trial court determines that communications were made during the course of an attorney-client relationship, the communications, including any reports of factual material, would be privileged, even though the factual material might be discoverable by other means."  (*Id.* at p. 740.)

The privilege "is to be strictly construed" in the interest of bringing to light relevant facts.  (*Greyhound Corp. v. Superior Court* (1961) 56 Cal.2d 355, 396.)  The privilege is also to be strictly construed "where the relationship is not clearly established."  (*People v. Velasquez* (1987) 192 Cal.App.3d 319, 327, fn. 4.)

13

"When a party asserts the attorney-client privilege it is incumbent upon that party to prove the preliminary fact that a privilege exists. [Citation.] Once the foundational facts have been presented, i.e., that a communication has been made 'in confidence in the course of the lawyer-client . . . relationship, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish that the communication was not confidential,' or that an exception exists. [Citations.]" (*State Farm*, *supra*, 54 Cal.App.4th at p. 639.)

Uber never established the Stroz Materials were attorney-client communications nor could it. The Stroz Materials resulted from a pre-acquisition due diligence process Uber's and Otto's attorneys jointly hired Stroz to perform. Both Levandowski and Ron had separate personal counsel who never retained Stroz. Uber and Otto attorneys directed Stroz's efforts, not the personal attorneys for Levandowski or Ron. Moreover, at the time Stroz performed its due diligence, the interests of Uber were adverse to those of Otto, Levandowski and Ron. Uber was in the process of evaluating whether it would purchase Otto and in doing so indemnify Levandowski and Ron. To that end, when Stroz interviewed Levandowski and Ron and collected their devices for review, it did not do so as their agent or on behalf of their attorneys. Levandowski and Ron were the subjects of an investigation and were not MoFo or O'Melveny clients. Their communications to MoFo and O'Melveny lawyers through Stroz (the agent) did not constitute information transmitted from client to lawyer. This is made clear in the Stroz engagement letter. It provides that "under no circumstances will Stroz Frieberg disclose to Uber or [MoFo] or any of their representatives any attorney-client privileged communications between Ottomotto and/or any of its employees, stockholders, officers, members, managers or directors, on the one hand, and counsel for Ottomotto or counsel to any of such persons, on the other hand, that are disclosed to or discovered by Stroz Friedberg in its performance of the services. For the avoidance of doubt, communications between Ottomotto and/or any of its employees, stockholders, officers, members, managers or directors, on the one hand, and any of the following attorneys and law firms, on the other hand, is attorney-client privileged communication and will not be disclosed by Stroz

14

Friedberg to Uber or [MoFo] or any of their respresentatives: O'Melveny & Myers LLP, . . . ." Thus, Levandowski's and Ron's communications with Stroz, as reflected in the Stroz Materials, and shared with MoFo are not protected by the attorney-client privilege.

Uber argues that the attorney-client privilege attaches to the Stroz Materials because Levandowski and Ron were Otto employees when they communicated with Stroz, who was acting as the agent for Otto's lawyers at O'Melveny. Uber observes that "[w]hen a lawyer for a corporation gathers facts from the corporation's employees in order to give legal advice to the corporation, those factual communications are privileged." Levandowski's and Ron's positions as Otto employees or executives does not alter our analysis. The record shows that neither of them had any attorney-client relationship with O'Melveny. Each retained separate personal counsel, and the Stroz engagement letter makes clear that attorney-client privileged information obtained from Otto employees is not to be shared with Uber and MoFo. Further, Levandowski's and Ron's personal attorneys established additional parameters around sharing certain information with the MoFo and O'Melveny lawyers. Prior to turning over devices and account information to Stroz, Ron's attorney instructed Stroz not to provide MoFo or O'Melveny or Uber or Otto any of Ron's privileged documents.[4]

Next, Uber claims these communications "were made for the purpose of seeking legal advice" to "assess the potential litigation threats faced" from Google. The record shows otherwise. The term sheet's "Indemnity Construct" does not discuss anticipated litigation. Rather, Diligenced Employees are required to cooperate and make their devices available to Stroz as a pre-condition to the execution of the Put Call Agreement and as a means to determine the scope of the indemnified claims. Levandowski did not comply with the Term Sheet to seek O'Melveny's legal advice. Rather, he provided Stroz information to clarify the extent of any obligation arising out of the Indemnity

---

[4] [

**REDACTED**

]

15

Construct.  In a letter written to the MoFo and O'Melveny attorneys, Levandowski's lawyer, John Gardner, stated the purposes of the Stroz examination were to "(i) support the indemnification agreement and (ii) to provide evidence that [Uber] and Otto exercised due care prior to . . . entering into the Transaction Documents."  Asked in deposition whether he agreed with the statement by Gardner, Otto's designated company witness testified, "You would have to ask Uber about the purposes.  As I've previously indicated, my understanding is that it was more broadly related to Uber determining whether to enter into the transaction, including the indemnification agreement."  The need for legal advice or to assess potential litigation threat did not drive Levandowski's or Ron's communications with Uber and Otto's lawyers.

Because Uber was unable to demonstrate Levandowski's or Ron's communications with Stroz were made in the course of an attorney-client relationship, the attorney-client privilege does not attach.

### C.  Attorney Work Product

Uber contends that even if the Stroz Materials were not privileged attorney-client communications, they were protected attorney work product.  Google argues the attorney work product doctrine provides no alternate ground to support the superior court's Discovery Order.  We agree with Google.

"An attorney's work product is the product of the attorney's ' " effort, research, and thought in the preparation of his client's case.  It includes the results of his own work, and the work of those employed by him or for him by his client, in investigating both the favorable and unfavorable aspects of the case, the information thus assembled, and the legal theories and plan of strategy developed by the attorney—all as reflected in interviews, statements, memoranda, correspondence, briefs, and any other writings reflecting the attorney's 'impressions, conclusions, opinions, or legal research or theories' and in countless other tangible and intangible ways." ' [Citations.]" (*Meza v. H. Muehlstein & Co.* (2009) 176 Cal.App.4th 969, 977.)

The attorney work product doctrine, codified at Code of Civil Procedure section 2018.030, provides: "A writing that reflects an attorney's impressions, conclusions,

16

opinions, or legal research or theories is not discoverable under any circumstances." (§ 2018.030, subd. (a).)  All other attorney work product "is not discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing that party's claim or defense or will result in an injustice." (§ 2018.030, subd. (b).)  The superior court did not address the attorney work product doctrine in the Discovery Order at issue in this appeal, so it made no relevant findings. Based on the record, the Stroz Materials do not meet either standard.

The Stroz Materials do not reflect an attorney's impressions, conclusions, opinions, or legal research or theories.  Rather, the Stroz Materials reflect the result of a factual investigation into possible past misconduct committed by Levandowski and Ron in the course of leaving Google so that Uber could decide whether to proceed with the Otto transaction and indemnify Levandowski and Ron.  The materials summarize what Levandowski and Ron told Stroz without the filter of Stroz's impressions, conclusions, opinions or legal theories.  The exhibits to the Stroz report report **[**

***REDACTED***                                          **]**

In addition, the engagement letter between Stroz and counsel further indicates that Stroz was not authorized to practice law and its services were "limited to non-legal services," Thus, the Stroz Materials do not constitute opinion work product that is absolutely protected under section 2018.030, subdivision (a).

Nor do the Stroz Materials qualify for the limited privilege for non-opinion work product set forth in section 2018.030 subdivision (b).  Substantial evidence in the record supports a conclusion that denial of discovery will unfairly prejudice Google in preparing its claims.  **[**

***REDACTED***

**]** These findings supported the arbitration panel's conclusion that production of the Stroz Materials "may be one of the only effective ways for Google to obtain certain relevant information in this case."[5]

Uber disputes that Google showed a "substantial need" for the information, and further argues Google cannot make such a showing because it elected to proceed with the arbitration without the Stroz Materials while there are alternative means to access it. We disagree. There is substantial evidence in this record from which the arbitrators could conclude the information in the Stroz Materials was material to Google's claims and could not otherwise be obtained. Moreover, there is no evidence identifying the alternative sources for it. We simply give no weight to the fact that Google was proceeding with the arbitration proceedings in the face of the adverse ruling from the trial court. These factors do not abate or otherwise negate the prejudice Google will unfairly suffer from being denied the Stroz Materials in arbitration.

### D. Waiver and Common Interest Doctrine

Finally, Google contends even if Levandowski's communications with Stroz were protected under the attorney-client privilege or attorney work product, any such privilege was waived by disclosure to Uber and not preserved by the common-interest doctrine. Google contends the superior court's reliance on the common-interest doctrine was misplaced. Because Uber never established the Stroz Materials were privileged or work product, we need not reach this issue. (See *OXY Resources California LLC v. Superior Court* (2004) 115 Cal.App.4th 874, 889.)

### DISPOSITION

Uber's motion to dismiss Google's appeal is denied. The superior court's Discovery Order granting Uber's petition to vacate the arbitration panel's discovery

---

[5] On March 12, 2018, Google requested we take judicial notice of an order from the underlying arbitration which it cites to in its reply brief in support of this argument. In our April 26, 2018 order, we further deferred ruling on the request until our consideration of this appeal on the merits. We now deny the request as unnecessary to our resolution of this appeal. (See *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6.)

18

decision is reversed.  The matter is remanded to the superior court with directions to enter a new order denying Uber's petition to vacate the arbitration award.  Google is awarded costs on appeal.

_____
Siggins, P.J.

We concur:


_____
Pollak, J.


_____
Jenkins, J.

Trial Court:                                   City & County of San Francisco Superior Court


Trial Judge:                                   Honorable Harold E. Kahn


Counsel:


Keker, Van Nest & Peters, Robert A. Van Nest, Dan Jackson, Jo W. Golub, W. Hamilton Jordan, Rachel E. Meny, Thomas E. Gorman for Defendant and Appellant.


Boies Schiller Flexner, Meredith R. Dearborn, Juan P. Valdivieso, Hamish Hume, Jessica Phillips for Plaintiff and Respondent.


Goodwin Procter, Andrew S. Ong for Real Party in Interest, Andrew Levandowski.


Taylor & Patchen, Karen S. Dhadialla for Real Party in Interest, Lior Ron.